STATE OF NORTH CAROLINA v. FRANKLIN D. GARDNER, JR.

No. 390A84

(Filed 18 February 1986)

### 1. Criminal Law § 161— failure to make timely objection or exception at trial—procedure for review

When a defendant contends that an exception was deemed preserved or taken without objection made at trial, he has the burden of establishing his right to appellate review by showing that the exception was preserved by rule or law or that the error alleged constitutes plain error. He must alert the appellate court that no action was taken by counsel at trial and thus establish his right to review by asserting the manner in which the exception was preserved or how the error may be noticed although not brought to the attention of the trial court. N.C. Rules of App. Procedure 10(b)(1).

### 2. Constitutional Law § 74; Criminal Law § 88.4— cross-examination about statement to officer—no constitutional plain error

Neither cross-examination questions nor defendant's responses constituted an impermissible comment upon defendant's invocation of his constitutional right to remain silent where the cross-examination was an inquiry into an admitted conversation between defendant and a police officer; defendant's response was that he didn't know anything about the break-in that was the subject of the detective's inquiry, clearly implying that he told the detective that he knew nothing of the break-in under investigation; and defendant's testimony was totally consistent with his position at trial and had no impeaching effect. Moreover, there was no prejudice because the evidence presented by the State was very convincing and, even without the alleged error, the jury probably would have reached the same result. N.C.G.S. 15A-1443(b) (1983).

### 3. Constitutional Law § 34; Criminal Law § 26.5— felonious breaking or entering and felonious larceny—sentenced for each—not double jeopardy

Defendant's conviction and sentencing for both felonious breaking or entering and felonious larceny did not violate the prohibitions against double jeopardy in the Fifth Amendment to the U.S. Constitution or in the North Carolina Constitution, Art. I, § 19, where defendant was tried for both offenses at a single trial and the contention was that he was subjected to multiple punishments for the same offense. Even if the elements of the two statutory crimes are identical and neither requires proof of a fact that the other does not, defendant may in a single trial be convicted of and punished for both crimes if it is found that the Legislature so intended; the Legislature intended that the crimes of breaking or entering and felonious larceny pursuant to that breaking or entering be separately punished. *State v. Midyette*, 270 N.C. 229, is overruled. N.C.G.S. 14-72(b)(2), N.C.G.S. 14-72(a).

Justice EXUM dissenting as to Part II.

Justices MARTIN and FRYE join in this dissenting opinion.

DEFENDANT appeals from a decision of a divided panel of the Court of Appeals, 68 N.C. App. 515, 316 S.E. 2d 131 (1984), finding no error in defendant's convictions of felony breaking or entering and felony larceny. Judgments were entered by *Ferrell, J.,* at the 17 January 1983 Criminal Session of Superior Court, GASTON County. Pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure, we allowed defendant's petition for certiorari to review an issue which was not the basis of the dissent in the lower court. Heard in the Supreme Court on 7 February 1985.

*Lacy H. Thornburg, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, and Marc D. Towler, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant brings forward two assignments of error on appeal. The first involves the cross-examination of the defendant concerning his post-arrest silence. In addition, defendant argues that double jeopardy principles prohibit his conviction and sentencing for both breaking or entering and felony larceny pursuant to that breaking or entering. For the reasons set forth below, we find no error and, therefore, affirm the decision of the Court of Appeals.

Defendant was convicted of breaking or entering a home in Gastonia, North Carolina, while the occupants were on vacation, and of felony larceny pursuant to the breaking or entering. The value of the goods stolen was placed at approximately $4,000. Evidence against the defendant consisted of the testimony of Bobby Grigg, who lived with his parents in a house across the street from the victims' residence. Grigg saw the defendant at approximately 6:00 p.m. on the day of the break-in. Grigg, the defendant, and an unidentified man rode in defendant's car to visit one of Grigg's friends. After leaving Grigg at his house at 7:30 p.m., the defendant and the unidentified man drove off.

Later that night as Grigg was walking to a friend's house, the defendant and the unidentified man pulled up in defendant's car and asked Grigg to accompany them to Blacksburg, South Carolina. Grigg noticed some guns, a television, a stereo, and a

file cabinet in the trunk and back seat of defendant's car. Defendant told Grigg that he had broken into the Barrow residence.

At some point during the trip, the defendant stopped and removed the file cabinet from his car. Grigg's fingerprints were later found on the file cabinet.

In Blacksburg, defendant met with Bobby Cooper, to whom he eventually sold a rifle and a revolver. These items were later recovered and identified as items stolen from the victims' home.

Defendant presented two alibi witnesses — his girl friend and his father. Defendant testified on his own behalf and denied seeing Grigg at any time on the evening of the break-in.

### I.

Defendant first argues that in cross-examining him concerning his post-arrest silence, the prosecutor committed "plain error of constitutional magnitude." Defendant's theory at trial was that Grigg's testimony "was a calculated attempt to 'frame' " him. On cross-examination, the following exchange took place:

Q. Are you saying he's [Grigg] concocted this entire story because you didn't loan him some money when you were playing pool?

A. To tell you the truth, I don't know why he's got me in on this.

Q. You don't have any idea, do you?

A. No, sir.

Q. Did you have an occasion to talk with Detective Duncan?

A. No, sir.

Q. You ever seen Detective Duncan?

A. You talking about that lady?

Q. Yes, sir.

A. No, sir.

Q. You ever talk to any detective about this?

A. I talked to one. When they looked me up, they come [sic] and got me off my job, and I went down there in Gaffney,

and they locked me up over there, and a detective and plain clothed officer in a uniform come [sic] down there and got me and brought me up here.

Q. What, if any, statement did you give that officer?

A. Any statement?

Q. Yes, sir.

A. I don't [sic] give him no [sic] statement.

Q. You didn't give him a statement did you?

A. No, sir. He was asking me questions about this break-in.

Q. And you didn't give a statement, did you?

A. No, sir. I didn't know what he was talking about.

There was no objection to the testimony. Nevertheless, defendant now complains that "by so attempting to impeach the defendant's exculpatory testimony on the basis of [his] post-arrest silence—i.e., the defendant's failure to relate either his alibi or Bobby Grigg's possible motive for implicating defendant in a crime—the prosecutor violated the defendant's constitutional right to remain silent and, thus, denied the defendant a fair trial." We do not agree.

[1] It is undisputed that defendant did not object to any of the cross-examination set out above. Failure to make timely objection or exception at trial waives the right to assert error on appeal, N.C. R. App. P. 10(b)(1); *State v. Murray*, 310 N.C. 541, 545, 313 S.E. 2d 523, 527 (1984); *State v. Oliver*, 309 N.C. 326, 334, 307 S.E. 2d 304, 311 (1983); and a party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of App. R. 10(b). *State v. Oliver*, 309 N.C. at 335, 307 S.E. 2d at 312. When a defendant contends that an exception, in the words of App. R. 10(b)(1), "by rule or law was deemed preserved or taken without" objection made at trial, he has the burden of establishing his right to appellate review by showing that the exception was preserved by rule or law or that the error alleged constitutes plain error. In so doing, he must alert the appellate court that no action was taken by counsel at trial and then establish his right to review by asserting the manner in which the exception was

preserved or how the error may be noticed although not brought to the attention of the trial court. *State v. Oliver,* 309 N.C. at 335, 307 S.E. 2d at 312. As the majority decision in the Court of Appeals notes, defendant did not comply with these requirements and should be deemed to have waived his right to except on appeal to the cross-examination.

[2] Even had defendant properly preserved and brought forward his exceptions, however, the cross-examination complained of entitles defendant to no relief. When first asked by the prosecution, "You ever talk to any detective about this?" defendant responded, "I talked to one." Following the apparent admission by defendant that he had talked to a detective about at least some aspects of the crime and the accusations against him, the prosecutor sought to ascertain what had been said. At that time, defendant denied having made any statement regarding the crime, because the detective "was asking me questions about this break-in," and defendant "didn't know what he [the detective] was talking about." The prosecutor then shifted his cross-examination to other matters.

This cross-examination did not violate defendant's constitutional right to remain silent. Defendant clearly indicated that he had not, in fact, remained silent but had talked with a detective about the matter. He further indicated that his conversation with the detective was not an inculpatory or exculpatory statement but rather a disavowal of any knowledge whatsoever of the crime. Under such circumstances, the cross-examination cannot be construed as an unconstitutional attempt by the State to use defendant's post-arrest silence to impeach his testimony at trial. The cross-examination did not involve an attempt to impeach defendant's credibility by reason of post-arrest silence, but was an inquiry into an admitted conversation between defendant and a police officer. Defendant's response to the cross-examination was that he was unable to make any statement to the officer because he had no knowledge of the crime. This was totally consistent with defendant's position at trial and had no impeaching effect.

Stripped of excess verbiage, the cross-examination testimony consisted of a question by the prosecutor as to whether defendant had talked to any detective "about this"; defendant's response that he had talked to one detective; the prosecutor's question of what defendant had said to the detective; and defendant's re-

sponse that he didn't know anything about the break-in that was the subject of the detective's inquiry. The clear implication of defendant's response is that he stated to the detective that he knew nothing of the break-in under investigation.

Whatever motives prompted the cross-examination questions, neither they nor defendant's responses constituted an impermissible comment upon the defendant's invocation of his constitutional right to remain silent.

However, even assuming, *arguendo*, the violation of a constitutional right, admission of the evidence complained of was harmless beyond a reasonable doubt. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972); N.C.G.S. § 15A-1443(b) (1983). This is so because the evidence presented by the State was very convincing. *State v. Black*, 308 N.C. 736, 741, 303 S.E. 2d 804, 807 (1983); *State v. Brown*, 306 N.C. 151, 164, 293 S.E. 2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982). As was said in *State v. Williams*, 288 N.C. 680, 693, 220 S.E. 2d 558, 568 (1975), "[T]his evidence was of such insignificant probative value when compared with the overwhelming competent evidence of guilt that its admission did not contribute to defendant's conviction and therefore admission of the evidence was harmless error beyond a reasonable doubt." *See also State v. Castor*, 285 N.C. 286, 293, 204 S.E. 2d 848, 853 (1974) (Huskins, J., dissenting).

Nor does this cross-examination without objection by defendant constitute "plain error" which would entitle defendant to relief upon our review of his subsequently asserted exceptions. In *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), this Court adopted the plain error rule with regard to App. R. 10(b)(1) when no objection or exception to evidence presented and admitted was made at trial. In so doing, this Court quoted with approval from *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.Ed. 2d 513 (1982), as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in

a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

In *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986), we said this:

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. at 741, 303 S.E. 2d at 806-07. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection. *Cf.* N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).

*Id.* at 39, 340 S.E. 2d at 83-84.

Even had the exchange on cross-examination constituted error, we conclude that, absent such error, the jury probably would have reached the same result.

## II.

[3] Defendant next argues that his conviction and sentencing in the same trial for both felony breaking or entering and felony larceny violates the prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution and in N.C. Const. art. I, § 19. On the felony larceny charge, two felony theories were presented to the jury in the alternative—N.C.G.S. § 14-72(b)(2), breaking or entering, and N.C.G.S. § 14-72(a), property worth more than $400.00. The jury did not specify the theory it relied upon, and it would be pure speculation to suggest which

theory it relied upon. We, therefore, for the purposes of deciding this case, construe this ambiguous verdict in favor of the defendant, *State v. Williams,* 235 N.C. 429, 70 S.E. 2d 1 (1952), and assume that the felony larceny verdict was predicated upon a finding that defendant committed the larceny pursuant to the breaking or entering. Thus, we assume that the predicate crime of breaking or entering was used to raise the larceny charge to the compound crime of felony larceny.

We are thus required to decide whether the prohibition in either the United States or North Carolina Constitution against placing a person twice in jeopardy prohibits, in a single trial, convictions and punishment for both breaking or entering and felony larceny based upon that breaking or entering. We hold that conviction and punishment for both in a single trial is not prohibited by the provisions of either Constitution.

The argument advanced by defendant has been presented under various titles: double jeopardy, lesser-included offense, an element of the offense, multiple punishment for the same offense, merged offenses, etc. The defendant and the State have briefed and argued the issue as one of "double jeopardy." We choose to avoid any lengthy discussion of the appropriate title, as it is the principle of law rather than the characterization of the issue that is important. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 23 L.Ed. 2d 656 (1969); *see also State v. Murray,* 310 N.C. 541, 547, 313 S.E. 2d 523, 528 (1984).

We are not here concerned with category (1) because there has been no prior acquittal, nor with category (2) because there was only one prosecution, i.e., both charges were tried contemporaneously in the same trial.

When analyzing the precise issue now before us as one of double jeopardy, courts across the nation have often tended to confuse rather than clarify the legal principles involved because of the failure to recognize and differentiate between single-prosecution and successive-prosecution situations. In *People v. Robideau,* 419 Mich. 458, 355 N.W. 2d 592, *reh'g denied,* 420 Mich. 1201, 362 N.W. 2d 219 (1984), the Michigan Supreme Court recent-

ly spoke to a possible reason for the obvious confusion among various court decisions which address the double jeopardy issue:

> We . . . come to the conclusion that much of the inconsistency in double jeopardy analysis results from the failure to clearly distinguish between single-prosecution and successive-prosecution cases. . . .
>
> Successive-prosecution cases involve the core values of the Double Jeopardy Clause, the common-law concepts of *autrefois acquit* and *convict.* (Citation omitted.) Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice "run the gauntlet", in not being subjected to "embarrassment, expense and ordeal", and in not being compelled "to live in a continuing state of anxiety and insecurity", with enhancement of the "possibility that even though innocent he may be found guilty". (Citation omitted.)
>
> . . . .
>
> Different interests are involved when the issue is purely one of multiple punishments, without the complications of a successive prosecution. The right to be free from vexatious proceedings simply is not present. The only interest of the defendant is in not having more punishment imposed than that intended by the Legislature. The intent of the Legislature, therefore, is determinative.

*Robideau,* 419 Mich. at 484-85, 355 N.W. 2d at 602-03.

Since defendant was tried for both offenses at a single trial, we will interpret his contention to be that he has been subjected to multiple punishments for the same offense.

Where multiple punishment is involved, the Double Jeopardy Clause acts as a restraint on the prosecutor and the courts, not the legislature. *Brown v. Ohio,* 432 U.S. 161, 53 L.Ed. 2d 187 (1977). The Double Jeopardy Clauses of both the United States and North Carolina Constitutions prohibit a court from imposing more punishment than that intended by the legislature. "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punish-

ments the Legislative Branch has authorized." *Whalen v. United States,* 445 U.S. 684, 688, 63 L.Ed. 2d 715, 721 (1980). Recent expression of this principle is found in *Ohio v. Johnson,* 467 U.S. 493, 499, 81 L.Ed. 2d 425, 433, *reh'g denied,* --- U.S. ---, 82 L.Ed. 2d 915 (1984):

> In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy — protection against cumulative punishments — is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger,* 18 U.S. (5 Wheat) 76, 93, 5 L.Ed. 37 (1820), the question' under the Double Jeopardy Clause [of] whether punishments are "multiple" is essentially one of legislative intent, see *Missouri v. Hunter,* 459 U.S. 359, 74 L.Ed. 2d 535, 103 S.Ct. 673 (1983).

In *State v. Murray,* 310 N.C. 541, 547, 313 S.E. 2d 523, 528 (1984), this Court said:

> [T]he Supreme Court of the United States has held that, where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court *in a single trial* may impose cumulative punishments under the statutes. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed. 2d 535 (1983).

*Missouri v. Hunter,* 459 U.S. 359, 74 L.Ed. 2d 535 (1983), which is controlling here, was decided as a result of the Missouri Supreme Court's misperceptions of the nature of the Double Jeopardy Clause's protection against multiple punishments.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy clause does no more than prevent the sentencing court from prescribing greater punishments than the legislature intended." *Id.* at 366, 74 L.Ed. 2d at 542. "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed." *Albernaz v. United States,* 450 U.S. 333, 344, 67 L.Ed. 2d 275, 285 (1981). Thus, the issue is whether the legislature intended the offenses of breaking or entering and felony larceny pursuant to the breaking or entering

to be separate and distinct offenses. *See State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982).

In *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66 (1967), we recognized that when a person is acquitted of or convicted and sentenced for an offense, the prosecution is prohibited from *subsequently* (i.e., in a subsequent, separately tried case) in-dicting, convicting, or sentencing him a second time for that of-fense, or for any other offense of which it, in its entirety, is an essential element. However, the Court went on to hold, "What the state cannot do by separate indictments returned successively and tried successively, it cannot do by separate indictments returned simultaneously and consolidated for simultaneous trial." *Id.* at 234, 154 S.E. 2d at 70. This latter language in *State v. Midyette* and the holding in that case has been rendered no longer authoritative by recent U.S. Supreme Court decisions such as *Missouri v. Hunter* and *Ohio v. Johnson* and the language in our recent case of *State v. Murray. State v. Midyette* is hereby overruled.

Traditionally, the United States Supreme Court has applied what has been referred to as the *Blockburger* test in analyzing multiple offenses for double jeopardy purposes. The opinion in *Blockburger v. United States*, 284 U.S. 299, 304, 76 L.Ed. 306, 309 (1932), stated:

> The applicable rule is that where the same act or trans-action constitutes a violation of two distinct statutory provi-sions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

If what purports to be two offenses actually is one under the *Blockburger* test, double jeopardy prohibits successive prosecu-tions, *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 53 L.Ed. 2d 1054 (1977); *Illinois v. Vitale*, 447 U.S. 410, 65 L.Ed. 2d 228 (1980), but, as was made clear in *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535 (1983), double jeopardy does not prohibit multiple punishment for of-fenses when one is included within the other under the *Block-burger* test if both are tried at the same time and if the legislature intended for both offenses to be separately punished. The *Blockburger* test is used by the federal courts in cases in-

volving violations of federal law in single prosecution situations as an aid to determining legislative intent. When each statutory offense has an element different from the other, the *Blockburger* test raises no presumption that the two statutes involve the same offense.

In single prosecution situations, the presumption raised by the *Blockburger* test is only a federal rule for determining legislative intent as to violations of federal criminal laws and is neither binding on state courts nor conclusive. When utilized, it may be rebutted by a clear indication of legislative intent; and, when such intent is found, it must be respected, regardless of the outcome of the application of the *Blockburger* test. That is, even if the elements of the two statutory crimes are identical and neither requires proof of a fact that the other does not, the defendant may, in a single trial, be convicted of and punished for both crimes if it is found that the legislature so intended. *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 67 L.Ed. 2d 275 (1981); *People v. Robideau*, 419 Mich. 458, 355 N.W. 2d 592, *reh'g denied*, 420 Mich. 1201, 362 N.W. 2d 219 (1984).

Though breaking or entering is not inevitably an element of felony larceny, if, as defendant points out, one looks beyond the *elements* of the two crimes (breaking or entering and felony larceny, in the abstract) and considers the *facts*, i.e., evidence used to prove the crimes, evidence of the crime of breaking or entering was, in fact, used to prove defendant guilty of "felonious" larceny. This is so because the legal theory upon which the State relied to convict defendant of the compound crime of felony larceny was that the larceny was committed pursuant to the breaking or entering.

In *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977), and *Illinois v. Vitale*, 447 U.S. 410, 65 L.Ed. 2d 228 (1980), the United States Supreme Court made it clear that a factual analysis rather than a definitional analysis must be undertaken by the courts in determining whether *successive prosecutions* are barred by the double jeopardy clause of the United States Constitution. Those cases do not apply, however, when a defendant is simultaneously tried for two offenses having overlapping facts and the question is whether the legislature intended for each offense to be separately punished.

In *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984), the defendant was tried in the same trial on charges of armed robbery and larceny. Defendant argued that his protections against double jeopardy had been violated in that he had been subjected to multiple punishments for the same offense. This Court rejected defendant's argument and stated:

> [E]ven where evidence to support two or more offenses overlaps, double jeopardy does not occur unless the evidence required to support the two convictions is identical. If proof of an additional fact is required for each conviction which *is* not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same. *State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982).

*State v. Murray*, 310 N.C. at 548, 313 S.E. 2d at 529. *See also State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983); *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980).

In *Whalen v. United States*, 445 U.S. 684, 63 L.Ed. 2d 715 (1980), the United States Supreme Court concluded that Congress did not intend multiple punishment when the defendant was convicted in a single trial of rape and of felony murder with rape as the felony, even though felony murder did not in all cases require proof of rape. There, the Court said: "There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance . . . ." *Id.* at ---, 63 L.Ed. 2d at 725.

The "factual" approach, rather than the "definitional" approach, is applied by this Court to prohibit multiple punishment in a single prosecution in the circumstance of the felony-murder rule. The felony-murder rule is a rule of ancient application under which there is a fictional transfer of the malice which plays a part in the underlying felony to the unintended homicide so that the homicide is deemed committed with malice.

> At common law, the author of an unintended homicide is guilty of murder if the killing takes place in the perpetration of a felony. This in essence constitutes the doctrine of felony-murder (also known as the doctrine of constructive malice).

Coke is probably responsible for the birth of the doctrine when, in 1644 [sic], he said "that a death caused by any unlawful act is murder." He illustrated thus: If a man shoots at a wild fowl and accidentally kills a man, that is an excusable homicide because the act of shooting is not unlawful; but if a man shoots at a cock or hen belonging to another man and accidentally kills a man, that is murder because the act is unlawful. The doctrine was later limited to cases where the unlawful act amounted to a felony. It was in this posture basically that the doctrine found its way eventually into American law. Although the doctrine of felony-murder has long since been abrogated in England, the doctrine has flourished in the United States, albeit over the years limitations have been imposed upon its operation.

In the typical case of felony-murder, there is no malice in "fact", express or implied; the malice is implied by the "law". What is involved is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is common law murder.

2 Wharton's Criminal Law § 145 (1979).

In *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972), *superseded on other grounds by statute,* we held that the crimes of felony breaking and entering and felony larceny merged with the crime of murder committed in the perpetration of those felonies. We reasoned that "[t]echnically, feloniously breaking and entering a dwelling [and, by extension, any underlying felony] is never a lesser included offense of the crime of murder." *Id.* at 215, 185 S.E. 2d at 675. However, proof of the breaking or entering was an "indispensable element" in the State's proof of the murder, and hence "the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment." *Id.* at 215-16, 185 S.E. 2d at 675. Unfortunately, the Court used this terminology: "In this sense, the felonious breaking and entering *was a lesser-included offense* of the felony murder." *Id.* at 216, 185 S.E. 2d at 675. (Emphasis added.) The confusion resulting from the failure to recognize and differentiate between

successive-prosecution and single-prosecution situations previously addressed herein appears to have been the basis for this statement.

> [T]he separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of felonious breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution on the theory of felony-murder. (Citation omitted.)
>
>     . . . .
>
> . . . For the reasons stated above, with reference to the felonious breaking and entering count in the separate bill of indictment, the felonious larceny was, under the circumstances of this case, a lesser included offense of the felony-murder, in the special sense above mentioned. The jury's verdict in the murder case established that defendant killed Ernest Mackey while engaged in the perpetration of the interrelated crimes of felonious breaking and entering and of felonious larceny.

*State v. Thompson,* 280 N.C. at 216, 185 S.E. 2d at 675.

However well entrenched the felony-murder merger rule may be in this State, the reasoning expressed in *Thompson* for its being, i.e., that the breaking and entering and the felony larceny were "lesser included offense(s) of the felony murder" and that the fact that Thompson could not be tried on the murder charge if he had been acquitted "in a prior trial" of the felony of breaking and entering or felony larceny, was erroneous. Clearly, what we refer to as the felony-murder rule is not founded upon the concept of "lesser-included offense" or upon the concept of "indispensable element of the offense" but upon the need to supply the element of malice where, in the strict sense, none existed. Other cases in which this Court has arrested judgment on the underlying felony under the felony-murder rule include: *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975), *death sentence vacated,* 428 U.S. 903, 49 L.Ed. 2d 1208 (1976) (kidnap and rape); *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975), *death sentence vacated,* 428 U.S. 903, 49 L.Ed. 2d 1208 (1976) (arson); *State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169 (1974) (armed robbery); *State v. Carroll,* 282

N.C. 326, 193 S.E. 2d 85 (1972) (armed robbery); and *State v. Peele*, 281 N.C. 253, 188 S.E. 2d 326 (1972) (armed robbery).

The United States Supreme Court reached a similar result eight years after *Thompson* in *Whalen v. United States*, 445 U.S. 684, 63 L.Ed. 2d 715 (1980). *Whalen* was decided not on the basis of double jeopardy, but on the basis of legislative intent — the Court holding that, though it could have done so, Congress had not authorized multiple punishments for rape and first-degree felony murder committed during the course of the rape.

In *State v. Carey*, 288 N.C. 254, 218 S.E. 2d 387 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1209 (1976), this Court attempted to clarify the application of our felony-murder rule as follows:

> It seems to us that the better practice where the State prosecutes a defendant for first-degree murder on the theory that the homicide was committed in the perpetration or attempt to perpetrate a felony under the provisions of G.S. 14-17, would be that the solicitor should not secure a separate indictment for the felony. If he does, and there is a conviction of both, the defendant will be sentenced for the murder and the judgment will be arrested for the felony under the merger rule. *State v. McLaughlin*, 286 N.C. 597, 213 S.E. 2d 238 (1975); *State v. Moore*, 284 N.C. 485, 202 S.E. 2d 169 (1973). If the separate felony indictment is treated as surplusage, and only the murder charge submitted to the jury under the felony-murder rule, then obviously the defendant cannot thereafter be tried for the felony. *State v. Peele*, 281 N.C. 253, 188 S.E. 2d 326 (1972).

*State v. Carey*, 288 N.C. at 274-75, 218 S.E. 2d at 400.

It is not error, however, to deny a motion to dismiss the underlying felony charge. As this Court said in *Thompson*, wherein the defendant was charged with felony breaking and entering and felony murder:

> The motion for judgment as in case of nonsuit with reference to the felonious breaking and entering count in the separate indictment was properly overruled. Although a remote possibility, conceivably the jury could have found beyond a reasonable doubt that defendant feloniously broke

into and entered the Mackey apartment but not that defendant shot and killed Ernest Mackey. Under appropriate instructions as to this contingency, it was proper to submit the felonious breaking and entering count in the separate indictment.

*State v. Thompson,* 280 N.C. at 215, 185 S.E. 2d at 675.

These and other cases have firmly established that in this State a defendant may not be punished both for felony murder and for the underlying, "predicate" felony, even in a single prosecution. Whether in other situations multiple punishments may be imposed when a defendant, in a single trial, is convicted of multiple offenses when some are fully, factually embraced within others is to be determined on the basis of legislative intent.

As the United States Supreme Court stated in *Missouri v. Hunter,* 459 U.S. at 368-69, 74 L.Ed. 2d at 543-44:

[S]imply because two criminal statutes may be construed to proscribe the same conduct under the Blockburger test does not mean that the Double Jeopardy Clause precludes the imposition, *in a single trial,* of cumulative punishments pursuant to those statutes. . . . Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial. (Emphasis added.)

*See also Ohio v. Johnson,* 467 U.S. 493, 81 L.Ed. 2d 425 (1984).

In reaching our decision in the present case, we first reiterate that the intent of the legislature is determinative. The Double Jeopardy Clause plays only a limited role in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding—that role being only to prevent the sentencing court from prescribing greater punishments than the legislature intended. We further reiterate that where our legislature "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory

construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. at 368-69, 74 L.Ed. 2d at 544. *See State v. Price*, 313 N.C. 297, 327 S.E. 2d 863 (1985).

The traditional means of determining the intent of the legislature where the concern is only one of multiple punishments for two convictions in the same trial include the examination of the subject, language, and history of the statutes.

With regard to the subject of the two crimes of breaking or entering and larceny, it is clear that the conduct of the defendant is violative of two separate and distinct social norms, the breaking into or entering the property of another and the stealing and carrying away of another's property.

The statutory history of the two crimes predates the turn of the twentieth century. At common law, larceny was a felony regardless of the value of the property stolen. *State v. Cooper*, 256 N.C. 372, 124 S.E. 2d 91 (1962). In 1895, the legislature changed the common law, making larceny of property valued under $20.00 a misdemeanor. However, there was a proviso added which stated that if the larceny was from the person *or pursuant to a breaking and entering*, the section would not apply. 1895 Pub. Laws ch. 285. Thus, the common law rule making larceny a felony regardless of value was left intact by the legislature when the larceny was committed pursuant to a breaking and entering. *State v. Cooper*, 256 N.C. 372, 124 S.E. 2d 91 (1962), determined that a thief who stole property in a breaking or entering should not get the benefit of the new misdemeanor provision, but should continue to face the harsher penalties of the common law. Over the years, the legislature amended the statute several times, raising the monetary level under which larceny would be treated as a misdemeanor in derogation of the common law. At the same time, it increased the number of exceptions to the statute. *See, e.g.,* 1913 Pub. Laws ch. 118; 1949 N.C. Sess. Laws ch. 145; 1959 N.C. Sess. Laws ch. 1285.

The statute remained in this form until 1969. In that year, the General Assembly rewrote N.C.G.S. §§ 14-51, 14-53, 14-54, 14-55, 14-56, 14-57, and 14-72 in acts which were titled as "clarifications" of the laws. 1969 N.C. Sess. Laws ch. 522, ch. 543.

The 1969 amendments to N.C.G.S. § 14-72 provided, *inter alia*, that larceny committed pursuant to a burglary (N.C.G.S. § 14-51), breaking out of a dwelling house burglary (N.C.G.S. § 14-53), breaking or entering (N.C.G.S. § 14-54), or burglary involving the use of explosives (N.C.G.S. § 14-57) would be a felony regardless of the value of the property stolen. Rather than continuing to leave the common law rule in effect *by implication* as to those specified circumstances of larceny, the legislature codified that rule, specifically stating that larceny is a felony regardless of value in those situations. Thus, the statute as presently constituted was intended to clarify, not change, the previous enactments.

Even the placement of these two crimes in the General Statutes may be some indication that the legislature intended that they be separate and distinct. Chapter 14 of the General Statutes, entitled "Criminal Law," is divided into eleven subchapters composed of seventy-four different articles. Breaking or entering (N.C.G.S. § 14-54) is found under Article 14 of Subchapter IV, entitled "Offenses Against the Habitation and Other Buildings," while larceny is found under Article 16 of Subchapter V, entitled "Offenses Against Property."

With regard to the judicial history of the treatment of the two crimes, this Court has uniformly and frequently held, from as early as the turn of the century, that breaking and/or entering and larceny are separate and distinct crimes. *E.g., State v. Hooker,* 145 N.C. 581, 59 S.E. 866 (1907); *State v. Brown,* 308 N.C. 181, 301 S.E. 2d 89 (1983). Our appellate courts have also sustained convictions for both breaking or entering and felony larceny pursuant to breaking or entering in a single trial. *See State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971); *State v. Greer,* 270 N.C. 143, 153 S.E. 2d 849 (1967); *State v. Aaron,* 29 N.C. App. 582, 225 S.E. 2d 117, *cert. denied,* 290 N.C. 663, 228 S.E. 2d 455 (1976), *cert. denied,* 430 U.S. 908, 51 L.Ed. 2d 585 (1977). It would appear that we have also approved multiple punishments for both offenses. *See State v. Morgan,* 265 N.C. 597, 144 S.E. 2d 633 (1965), *overruled on other grounds,* 275 N.C. 439, 168 S.E. 2d 401 (1969). These many years of uniform construction have been acquiesced in by our legislature. Had conviction and punishment of both crimes in a single trial not been intended by our legisla-

ture, it could have addressed the matter during the course of these many years.

The two crimes of breaking or entering and felony larceny carry the same penalties—both are Class H felonies, punishable by a maximum of ten years imprisonment. N.C.G.S. § 14-1.1. It is noteworthy that under defendant's analysis here—that the crime of breaking or entering is a lesser-included offense of felony larceny pursuant to a breaking or entering—first- and second-degree burglary and burglary with explosives (Class C, D, and E felonies, respectively, carrying maximum sentences of 50, 40, and 30 years, respectively) would be lesser-included offenses of the Class H felony of larceny. Our legislature could not have intended such an absurd result.

We do not believe that our legislature intended that the crime of breaking or entering should subsume the co-equal crime of felony larceny committed pursuant to the breaking or entering. We conclude that the legislature intended that the crime of breaking or entering and the crime of felony larceny pursuant to that breaking or entering be separately punished.

We hold that a defendant may be tried for, convicted of, and punished separately for the crime of breaking or entering and the crime of felony larceny following that breaking or entering when the cases are jointly tried. Finally, we note that this question might have been avoided altogether by the presentation of the felony larceny to the jury upon specific verdict issues.

Affirmed.

Justice EXUM dissenting as to Part II.

I concede that under *Missouri v. Hunter,* 459 U.S. 359, 74 L.Ed. 2d 535 (1983), the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not preclude punishing this defendant for both felonious breaking or entering and felonious larceny, of which, we must assume, the breaking or entering is an essential element, so long as our legislature so intended.

I think *Hunter* was incorrectly decided. It is based, in my view, on a misapplication of principles formulated by the United

States Supreme Court in earlier cases and designed to resolve double jeopardy questions other than the one presented here and in *Hunter*. The misapplication is understandable because as the Supreme Court itself acknowledged in *Albernaz v. United States*, 450 U.S. 333, 343, 67 L.Ed. 2d 275, 284 (1981), its "decisional law in the [double jeopardy] area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." Now a majority of our Court has, by slavishly following *Hunter* and misapplying some of the same precedents there relied on, determined to entangle itself in this Sargasso Sea even after being forewarned by the Court which created it and decided *Hunter* based upon it. Forewarned, for the majority, is not, alas, to be forearmed.

I concede, of course, that we are bound by *Hunter* insofar as we must decide this case under the Double Jeopardy Clause of the Fifth Amendment. We are not bound to follow *Hunter* and are free to follow our own precedents on the subject insofar as we base decision on the double jeopardy prohibition contained in the Law of the Land Clause in Article I, section 19 of the North Carolina Constitution. *See State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243 (1954) (Law of Land Clause includes prohibition against double jeopardy).

Unlike those of the United States Supreme Court, our precedents speak with one clear, unambiguous voice on the subject. The majority recognizes as much in that it finds it necessary to overrule *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66 (1976), and to find "erroneous" the stated rationale for the Court's decision in *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666 (1972), in order to sustain its position.

We should in this case follow our precedents, avoid the United States Supreme Court's Sargasso Sea, and hold that to punish both for the breaking or entering and for the larceny in this case violates the double jeopardy prohibition of Article I, section 19 of the North Carolina Constitution.

The essential fallacy in the majority opinion and the United States Supreme Court's *Hunter* opinion is the failure to distinguish between two different situations which call for different applications of double jeopardy principles. The first situation is that in which a single criminal transaction amounts to the violation of

State v. Gardner

two or more criminal statutes, neither of which violation forms an essential element of the other. The question is: Can the state convict and punish for each criminal offense committed? In this context the United States Supreme Court has concluded that it can so long as the legislature so intended. *Albernaz v. United States*, 450 U.S. 333, 67 L.Ed. 2d 275 (1981); *Blockburger v. United States*, 284 U.S. 199, 76 L.Ed. 306 (1932). This Court, without discussing the question of legislative intent, has concluded that it can. *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955); *State v. Davis*, 223 N.C. 54, 25 S.E. 2d 164 (1943). This was the context addressed by the language in *State v. Murray*, 310 N.C. 541, 547, 313 S.E. 2d 523, 528 (1984), here relied on by the majority. These cases note that determination of whether the single transaction really constitutes more than one offense or only one offense may require an examination of the various elements involved in the offenses and may ultimately rest on whether each offense has an element the other does not. But once it is established through this test that two or more different criminal offenses have been committed, albeit by only one factual transaction, the double jeopardy prohibition does not preclude punishing each different offense committed if the legislature intended that each be separately punished.

This is not the question presented in this appeal, although the majority sometimes treats the appeal as if it were. The question presented in this appeal may be put as follows: When a defendant is simultaneously convicted of two or more crimes and one of those crimes constitutes an essential element of the other so that without this elemental crime there could be no conviction of the other compound crime, does the double jeopardy prohibition preclude punishing defendant both for the compound crime and the elemental crime. Until *Hunter*, the United States Supreme Court cases relied on by the majority do not answer this question. Except for *Hunter*, these cases do not hold that this question resolves itself to one of legislative intent.

The closest case factually to the one before us is *Whalen v. United States*, 445 U.S. 684, 63 L.Ed. 2d 715 (1980). In *Whalen* defendant was convicted of first degree "felony murder" on the theory that he murdered his victim during the perpetration of a rape. He was also convicted of the rape. He was given consecutive sentences for both the first degree murder and the rape. The

United States Supreme Court held that consecutive sentences could not be imposed for both crimes on the ground "that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape . . . ." *Id.* at 693, 63 L.Ed. 2d at 725, and "[t]he Double Jeopardy Clause *at the very least* precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." *Id.* at 689, 63 L.Ed. 2d at 722 (emphasis supplied). *Whalen* does not hold, indeed it could not have held given its view of congressional intent, that had Congress intended consecutive punishments for both the rape and the murder it would have been constitutionally permissible.

As I have previously noted, *Albernaz* and *Blockburger*, and our own *Murray*, involved situations where one transaction resulted in defendants' convictions of one or more crimes. In none of the cases was one of the crimes an essential element of another. The cases address the question of whether in law one or more crimes were committed and if so whether each crime could be punished separately and cumulatively. The Court looked to see whether each crime had elements not present in the others to answer the first question and to legislative intent to answer the second.

Our felony murder cases provide a perfect analogy for resolving this case and should be considered as controlling it. It has, as the majority concedes, long been the law in this jurisdiction that the state may not punish both for the felony murder and the underlying felony which constitutes an essential element of the felony murder. *State v. Martin*, 309 N.C. 465, 308 S.E. 2d 277 (1983); *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973); *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666 (1972). This result has sometimes been referred to as the "merger rule," or "merger doctrine." *State v. Silhan*, 302 N.C. 223, 262-63, 275 S.E. 2d 450, 478 (1981); *State v. Jeffries*, 55 N.C. App. 269, 290, 285 S.E. 2d 307, 320 (1982). The true basis for the rule, however, lies in the double jeopardy prohibition.

In considering whether to permit the underlying felony of armed robbery in a capital, felony murder prosecution to be considered as an aggravating circumstance, this Court had reason to consider the application of the merger rule in concluding that the

underlying felony, if used to convict defendant of first degree felony murder, could not also be considered as an aggravating circumstance at the sentencing phase. *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941 (1980). For a unanimous Court, Justice, now Chief Justice Branch wrote:

> *Although designed to prevent double jeopardy, a problem with which we are not here confronted, we think the merger rule sheds light on the question before us.* Once the underlying felony has been used to obtain a conviction of first degree murder, *it has become an element of that crime and may not thereafter be the basis for additional prosecution or sentence.* Neither do we think the underlying felony should be submitted to the jury as an aggravating circumstance in the sentencing phase when it was the basis for, and an element of, a capital felony conviction.

*Id.* at 113, 251 S.E. 2d at 567-68 (emphasis supplied).

Neither do I think, as does the majority, that this Court erred in *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666 (1972), when it said, in a felony murder case, that the underlying felony of felonious breaking or entering was a lesser included offense of the felony murder in the sense that it was "an essential and indispensable element in the state's proof of murder committed in the perpetration of the felony of feloniously breaking into and entering that particular dwelling." 280 N.C. at 215, 185 S.E. 2d at 675. This language was quoted with approval and emphasized in *State v. McLaughlin*, 286 N.C. 597, 213 S.E. 2d 238 (1975).

The reason, of course, that the underlying felony in a felony murder prosecution is a lesser included offense of the felony murder is because once the state has proved the felony murder it has proved all of the elements of the underlying offense and in addition the other elements necessary to prove the felony murder. The underlying felony is a lesser included offense in a felony murder prosecution in the same sense as the joyriding offense was held to be a lesser included offense of auto theft for double jeopardy purposes in *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977). The Court there said:

> Here the Ohio Court of Appeals has authoritatively defined the elements of the two Ohio crimes: joyriding consists of

taking or operating a vehicle without the owner's consent, and auto theft consists of joyriding with the intent permanently to deprive the owner of possession. App. 22. Joyriding is the lesser included offense. The prosecutor who has established joyriding need only prove the requisite intent in order to establish auto theft; the prosecutor who has established auto theft necessarily has established joyriding as well.

*Id.* at 167, 53 L.Ed. 2d at 195. The Court in *Brown* held that a defendant who had pled guilty to joyriding could not later be prosecuted for auto theft, saying:

If two offenses are the same . . . for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. Unless 'each statute requires proof of an additional fact which the other does not' the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment.

*Id.* at 166, 53 L.Ed. 2d at 194-95 (citations in original deleted). The Supreme Court then concluded that proof of auto theft necessarily proved joyriding. There were no additional elements of joyriding which were not included in the crime of auto theft. Therefore both offenses were the same, and both successive prosecutions and double punishment were prohibited by the Double Jeopardy Clause.

In *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978), defendant kidnapped two women, forced them at gunpoint to a deserted place where he then robbed both, shot one — causing serious injury but not death — and raped the other. He was convicted at one trial of kidnapping, rape, armed robbery, and felonious assault. One of the questions in the case was whether he could be sentenced for all crimes, the sentences to be served consecutively. The argument was made that the robbery, the rape and the assault were essential elements required to prove "aggravated" kidnapping under the kidnapping statute as it was then written. We concluded that these felonies were not elements of

kidnapping nor were they sentence-enhancing factors. Defendant, we concluded under the statute as it was then written, could have been given the same punishment for kidnapping whether or not these other offenses had occurred, unless defendant could have proved certain mitigating factors then provided for in the statute.

Importantly in *Williams* this Court acknowledged as valid the principle relied on by defendant "that when a criminal offense in its entirety is an essential element of another offense a defendant may not be punished for both offenses. . . ." *Id.* at 659, 249 S.E. 2d at 713. The Court went on to say:

> This principle is frequently applied in felony-murder cases when the underlying felony is used as an essential element of first degree murder. In such cases punishment for the murder precludes punishment also for the underlying felony. (Citations omitted.) The principle, however, is not limited to felony murder, but applies in any situation in which one criminal offense is in its entirety an essential element of another offense. *State v. Midyette,* 270 N.C. 229, 154 S.E. 2d 66 (1967). The basis for each application is the constitutional prohibition against double jeopardy. Amends. V and XIV, U.S. Const.; Art. I, § 19, N.C. Const. *See* cases cited in 4 N.C. Index 3d, Criminal Law, §§ 26-26.9.

*Id.*, n. 3.

In *Midyette* two indictments were consolidated for trial. In one, No. 483, defendant was charged with the felonious assault of one W. I. Robertson by shooting him with a .22 caliber pistol. In the second case, No. 484, defendant was charged with resisting a public officer, to wit, W. I. Robertson, while in the discharge of his duty "by firing at and hitting the said officer with bullets from a .22 caliber pistol." Defendant was convicted and sentenced on both offenses. On appeal, this Court arrested judgment in the resisting arrest case. The Court said that having been convicted of the felonious assault against Robertson, defendant "could not thereafter be lawfully indicted, convicted and sentenced a second time for that offense, or for any other offense of which it, in its entirety, is an essential element." 270 N.C. at 233, 154 S.E. 2d at 70. The Court went on to say that the state by its allegations in the indictments had made the assault case an essential element of the resisting arrest case, saying:

> By the allegations it elects to make in an indictment, the state may make one offense an essential element of another, though it is not inherently so, as where an indictment for murder charges that the murder was committed in the perpetration of a robbery. In such a case, a showing that the defendant has been previously convicted, or acquitted, of the robbery so charged will bar his prosecution under the murder indictment. *State v. Bell,* 205 N.C. 225, 170 S.E. 2d 50.

*Id.* Finally, the Court noted that under the indictments by which defendant was tried

> the State could not convict the defendant of resistance of a public officer in the performance of his duty without proving the defendant guilty of the exact offense [the felonious assault] for which he has been convicted and sentenced [in the assault case].

*Id.* at 234, 154 S.E. 2d at 70.

The above authorities of this Court should control this case. Here, the breaking or entering was an essential element of the felonious larceny. Without it, defendant could not have been convicted of felonious larceny, assuming, as we must, that this was the theory of felonious larceny upon which the jury relied. Consequently, the state may not punish defendant for both the felonious larceny and the felonious breaking or entering.

To me, it simply makes no sense to say that the constitutional double jeopardy prohibition provides no check on legislative but only on judicial power. If, as the United States Supreme Court has said many times, and as the majority here acknowledges, the double jeopardy prohibition means that the state cannot punish more than once for a single offense, this must mean that the legislature cannot authorize courts to punish more than once for a single offense. I would so interpret this state's constitution, notwithstanding what the United States Supreme Court has held with regard to the federal constitution.

The expression that the double jeopardy prohibition applies more to the courts than it does to the legislature arises from the fact that only courts punish for crime. The legislature defines crimes and sets punishments, but it does not punish. Since only

courts punish, the prohibition against double punishment must of necessity be directed more to courts than to the legislature. The expression means that courts must not apply legislatively prescribed punishments so as, in effect, to punish more than once for a single offense. It does not mean that the legislature is free to authorize the courts to punish more than once for a single offense.

Under our precedents when one crime, the elemental crime, is used as an essential element to prove another compound crime, which could not be proved without this element, and defendant is convicted simultaneously of both the compound crime and the elemental crime, both convictions cannot stand and be separately punished. To do so, this Court has consistently held, is to convict and punish for the elemental crime twice—a violation of the double jeopardy prohibition. These holdings seem eminently sound to me.

Even if the majority's position that the double jeopardy question resolves itself into one of legislative intent is adopted, I find no evidence in the statutes of any legislative intent to authorize punishment for both felonious larceny and felonious breaking when the latter constitutes an essential element of the former. In *Missouri v. Hunter,* 459 U.S. 359, 74 L.Ed. 2d 535 (1983), upon which the majority primarily relies, the Missouri legislature had expressly authorized punishment for the primary felony ["armed criminal action"] and additional punishment for the elemental felony ["first degree robbery"]. I do not think we should, as the majority does, imply from the statutory history of the larceny and breaking statues a legislative intent to authorize punishment for the felonious larceny and in addition punishment for the felonious breaking which forms an essential element of the larceny. The breaking and larceny statutes were passed, or amended, before *Missouri v. Hunter* was decided when decisions of both this Court and the United States Supreme Court provided no support for the notion that the legislature could authorize punishment for a primary offense and additional punishment for an offense forming an essential element thereof. It seems clear to me that when the larceny and breaking statutes were passed and amended, our legislature would not have thought it had the power to authorize punishment for both felonious larceny and felonious breaking when the latter was an essential element of the former. Not

thinking it had the power, it would not have intended to exercise it.

The majority argues that this Court has "approved multiple punishments" for breaking or entering when this crime is an essential element of felonious larceny, *i.e.*, that punishment may be imposed both for the breaking offense and the larceny offense when defendant is tried and convicted of both at the same trial and the former is an essential element of the latter. It then argues that since the legislature has acquiesced in this Court's "approval," it must intend the result we approved.

The majority relies solely on *State v. Morgan*, 265 N.C. 597, 144 S.E. 2d 633 (1965), for the proposition that our Court has heretofore approved the result it reaches today. In *Morgan* defendant was indicted in one count of the bill for felonious breaking or entering a certain storehouse and in another count with the larceny of goods of less than $200 in value. He entered pleas of guilty to both counts. He was sentenced in the breaking case to not less than two nor more than four years and received a similar sentence in the larceny case, the latter to begin at the expiration of the former. Defendant's sole contention on appeal was that the sentences imposed were excessive and harsh and "unwarranted by the true spirit of the statute." This Court, in a *per curiam* opinion, affirmed the judgments, saying simply:

> Under the provisions of G.S. 14-54, the crime charged in the first count, to which defendant pleaded guilty, is punishable by a sentence in prison of four months to ten years.
>
> The crime charged in the second count in the bill of indictment, to wit, larceny of property from a storehouse, with felonious intent, *et cetera*, is a felony as at common law, without regard to the value of the property stolen. *S. v. Cooper*, 256 N.C. 372, 124 S.E. 2d 91.
>
> The court below could have imposed a maximum sentence of ten years on each count.
>
> There is no merit in defendant's contention, and the sentences imposed by the court below will be upheld.

*Id.* at 598, 144 S.E. 2d at 633.

*Morgan* is too slender a reed to support the majority's legis-lative-acquiescence-in-judicial-approval theory. First, there was no contention in *Morgan* that the sentences imposed violated the double jeopardy prohibition. Second, defendant entered pleas of guilty to the crimes charged. It was not, therefore, incumbent upon the Court to determine upon which theory defendant might have been convicted of felonious larceny had he not pled guilty.

> A defendant, nothing else appearing, pleads guilty to a charge contained in a bill of indictment not to a particular legal theory by which that charge may be proved. His plea waives his right to put the state to its proof. It obviates the necessity for the state's invocation of some particular legal theory upon which to convict defendant. The question of which theory, if there is more than one available, upon which defendant might be guilty does not arise. His plea of guilty means, nothing else appearing, that he is guilty upon any and all theories available to the state.

*State v. Silhan,* 302 N.C. 223, 263, 275 S.E. 2d 450, 478 (1981). Finally, the result in *Morgan,* insofar as it stood for the proposi-tion that the larceny count in the bill of indictment was sufficient to charge a felony, was overruled in *State v. Jones,* 275 N.C. 432, 168 S.E. 2d 380 (1969).

Justices MARTIN and FRYE join in this dissenting opinion.