IN THE SUPREME COURT OF NORTH CAROLINA

No. 45A12

FILED 8 MARCH 2013

STATE OF NORTH CAROLINA

       v.

AADIL SHAHID KHAN

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 721 S.E.2d 409 (2012), affirming in part and vacating and remanding in part judgments entered on 15 November 2010 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Supreme Court on 15 October 2012.

*Roy Cooper, Attorney General, by Laura E. Parker and Teresa M. Postell, Assistant Attorneys General, for the State-appellant.*

*Tharrington Smith, L.L.P., by Douglas E. Kingsbery, Wade M. Smith, and Derick R. Vollrath, for defendant-appellee.*

EDMUNDS, Justice.

Defendant was named in two indictments and entered a negotiated plea in each. We consider in this appeal whether the trial court properly imposed an aggravated sentence for defendant's convictions on one of these indictments. We find that defendant unambiguously stipulated to application of the aggravating factor for both indictments and that application of the aggravating factor for both

indictments was supported beyond a reasonable doubt by the evidence. Accordingly, we reverse the holding of the Court of Appeals to the contrary.

The record indicates that the victim named in each indictment, Matthew Silliman, was a friend of defendant. In late October 2008, Ryan Hare devised a plan to kill Silliman and solicited defendant and others to help. On 25 November 2008, defendant and the coconspirators lured the unsuspecting victim into an automobile and drove him to a remote area where defendant was to use a Taser to incapacitate the victim while the others strangled him. Although the Taser failed to function and the attempt to kill Silliman was aborted mid-struggle, the victim remained with defendant and his other assailants because the victim still believed they were his friends. Defendant and the others convinced Silliman that a fictitious "Roger" was hunting him and wanted to kill him. They then helped Silliman hide from "Roger" by taking the victim to an abandoned house, where he stayed for the next five days. On 30 November 2008, defendant and the other coconspirators inveigled Silliman into drinking a concoction of wine and horse tranquilizers. When Silliman fell unconscious, his mouth was taped and a plastic bag tied over his head, asphyxiating him.

On 16 December 2008, defendant was charged in indictment 08 CRS 85094 with murder and conspiracy to commit murder ("the 2008 indictment"). This indictment was based upon the events of 30 November 2008. Later, on 9 February 2010, defendant was charged in indictment 10 CRS 652 with attempted first-degree

murder and conspiracy to commit first-degree murder ("the 2010 indictment"). This second indictment alleged the events of 25 November 2008.

Defendant and the State negotiated a plea agreement. The terms of the plea were set out in a written Transcript of Plea form provided by the Administrative Office of the Courts, form AOC-CR-300. In the portion of the Transcript of Plea titled "Plea Arrangement," the prosecutor, defendant, and defense counsel initialed their agreement that the two counts in the 2010 indictment would be consolidated for judgment. In addition, the first-degree murder count in the 2008 indictment would be reduced to second-degree murder, and this reduced charge would be consolidated for judgment with the other count in that indictment. The agreement provided that the sentence imposed on the 2008 indictment would run consecutively to the sentence imposed on the 2010 indictment. This portion of the agreement also contained terms relating to continuation of judgment and defendant's anticipated cooperation.

Elsewhere in the Transcript of Plea form, Question 15 was checked so that the preprinted portion read, "Have you admitted the existence of the aggravating factors?" The answer, "Yes," is handwritten on the form beside the question, and in the space provided below the question was typewritten: "#15 – The defendant took advantage of a position of trust or confidence to commit the offense." Similarly, Question 16 was checked so that it read, "Do you agree that the State has provided you with appropriate notice about the aggravating factors and/or sentencing points

in your case?" The handwritten answer, "Yes," is entered beside the question. Question 17 was checked, indicating that defendant understood that the State was stipulating to three mitigating factors, which were typewritten below this question. Question 26 was checked so that it read, "Do you agree that there are facts to support your plea and admission to aggravating factors, and do you consent to the Court hearing a summary of the evidence?" Again, the answer, "Yes," is handwritten beside the question. The agreement implicitly left to the judge the balancing of the aggravating and mitigating factors, as well as the length of the sentence that would be imposed under each indictment.

Defendant entered his plea at a hearing held on 25 August 2010, at which time the Transcript of Plea was signed by the judge and ordered recorded. At the hearing, the trial judge asked defendant whether he understood that, under the plea agreement, the charge of first-degree murder would be reduced to second-degree murder, the two counts in each indictment would be consolidated for judgment, and the "[s]entence imposed in [the 2008 indictment] is to run at the expiration of the sentence imposed in [the 2010 indictment]." When defendant answered, "Yes," the trial court asked, "Is that what you understand to be your entire agreement with the [S]tate?" Defendant again responded, "Yes." Later in the colloquy, the trial judge asked defendant: "You also stipulate that there is – to the existence of aggravating factor number 15, that you took advantage of a position of trust or confidence to commit the offense?", to which defendant responded, "Yes."

The prosecutor then presented the factual basis for the plea, adding that "[a]s far as the aggravating factors, to put that in the record, . . . [defendant] was a close friend of [the victim]. I've read numerous computer transactions between them, and quite frequently they refer to each other as 'twins.'" The trial judge accepted defendant's guilty plea and continued judgment until after the conclusion of the trial of one of defendant's coconspirators.

Defendant was sentenced on 15 November 2010. The prosecutor presented testimony from several of the victim's family and friends, then asked the trial court to "find that this is an aggravated crime" and to sentence defendant "in the aggravated range to a sentence of 196 to 245 [months] followed by another sentence of 196 to 245 [months]," adding that the "plea agreement contemplates such an arrangement" and that defendant "has already received the benefit in not being tried for first-degree murder. I'd ask that you sentence him to the maximum time allowed." Although defendant presented two mitigating witnesses and made extensive arguments in favor of a mitigated sentence, defense counsel acknowledged the aggravating factor, stating that "I do not disagree that there was an abuse of trust here, and we've agreed to that absolutely." The trial judge found the mitigating factors to which the parties had stipulated, but also found beyond a reasonable doubt the aggravating factor that defendant took advantage of a position of trust, then sentenced defendant in the aggravated range for the convictions on both indictments:

> In File Number 10-CRS-652, for the conspiracy to commit murder and attempted murder of [the victim], occurring on or about November 25, 2008, I order you incarcerated for a term of 196 months minimum, 245 months maximum.

> In the file 08-CRS-85094, for the conspiracy to commit murder and the murder of [the victim] in the second degree, I order you incarcerated for a minimum term of 196 months and a maximum term of 245 months.

The trial judge prepared two judgments, one for each indictment, along with two corresponding "Felony Judgment Findings of Aggravating and Mitigating Factors." In the latter forms, the trial judge made separate findings as to the sentence imposed on each indictment. He determined that the aggravating factor was supported beyond a reasonable doubt and that the aggravating factor outweighed the mitigating factors, justifying an aggravated sentence on each indictment.

Defendant appealed to the Court of Appeals, arguing, *inter alia*, that he had stipulated to the aggravating factor in the 2008 indictment only and that the trial court erred in imposing an aggravated sentence on the 2010 indictment because he had entered no stipulation in that case. In a divided opinion, the Court of Appeals majority found that the Transcript of Plea was ambiguous. *State v. Khan*, ___ N.C. App. ___, 721 S.E.2d 409, 2012 WL 121230, at *3 (2012). The majority noted that the "File No." box at the top of the Transcript of Plea form listed the single file number of the 2008 indictment, even though each of the charges in the 2008 and

2010 indictments were listed individually in the body of the plea agreement. *Khan*, 2012 WL 121230, at *2. The majority also pointed out that the trial court referred to "the offense," in the singular, when questioning defendant about the aggravating factor. *Id.* at *2-3. The Court of Appeals majority determined that defendant reasonably could have believed the aggravating factor to which he stipulated would apply only to the 2008 indictment. *Id.* at *3. Asserting that "the State [is held] to a higher degree of responsibility than the defendant for any ambiguities in the plea agreement," the majority concluded that the ambiguities should be construed against the State. *Id.* (citing *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313, 315 (1999), *remanded per curiam*, 353 N.C. 259, 538 S.E.2d 929 (2000)). The majority vacated the sentence imposed on the 2010 indictment and remanded the case for a new sentencing hearing on that indictment. *Id.*

The dissenting judge disagreed. 2012 WL 121230, at *4 (Steelman, J., concurring in part and dissenting in part). While acknowledging that only one indictment number was listed at the top of the Transcript of Plea, the dissenter pointed out that the document was a "general plea form" promulgated by AOC "to be used when a defendant pleads to one offense or to multiple offenses." *Id.* Accordingly, a reviewing court should consider "the totality of the document." *Id.* Both indictments and all four charges were detailed in the body of the agreement under Question 12, in which defendant was asked if he "under[stood] that [he was] pleading guilty to the charges shown below." *Id.* In addition, the preprinted

language of the Transcript of Plea in Question 15 referred to "aggravating factors," while "[t]he language of the aggravating factor," added by the attorneys under Question 15, was "taken *verbatim* from [N.C.G.S.] § 15A-1340.16(d)(15), including the language referencing to 'the offense' in the singular." *Id.* The dissenting judge further observed that defendant acknowledged in the Transcript of Plea both that he had received proper notice of the aggravating factor and that there were facts supporting it. 2012 WL 121230, at *4-5. As a result, the dissenting judge concluded that "[t]here is absolutely nothing in the plea transcript limiting this aggravating factor to [the 2008 indictment]." *Id.* at *4. The dissenting judge would have determined the Transcript of Plea was not ambiguous and upheld the sentence imposed by the trial court. *Id.* at *5.

The State appealed to this Court on the basis of the dissent and argues that the Transcript of Plea was not ambiguous. Defendant responds that the Transcript of Plea and the colloquy at the plea hearing were fatally ambiguous. Defendant also raises additional arguments challenging the validity of the sentence imposed by the trial court. First, he argues that the State failed to present sufficient evidence to support imposition of the aggravating factor as to the 2010 indictment. Second, he argues that the trial court failed to follow statutorily mandated procedures during the hearing when the plea was taken. We begin by considering whether the Transcript of Plea was ambiguous, then turn to the other issues raised by defendant.

Whether a document is ambiguous is a question of law. *See, e.g., River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 123, 388 S.E.2d 538, 551 (1990). We review questions of law de novo. *See, e.g., In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

The use of plea agreements has been approved by the General Assembly. Article 58 of Chapter 15A of the General Statutes of North Carolina ("Procedures Relating to Guilty Pleas in Superior Court") regulates resolution of criminal charges when pleas of guilty are negotiated. Recognizing that a pleading defendant surrenders rights guaranteed under the constitutions of North Carolina and of the United States, the individual statutes in Article 58 set out a procedure that is transparent to the parties and to the public. *See State v. Agnew*, 361 N.C. 333, 335, 643 S.E.2d 581, 583 (2007) ("Because a guilty plea waives certain fundamental constitutional rights such as the right to a trial by jury, our legislature has enacted laws to ensure guilty pleas are informed and voluntary.").

The record establishes that the plea agreement here was negotiated, memorialized in the Transcript of Plea, and executed in accordance with the applicable statutes. Although defendant argues that the Court of Appeals majority correctly found that the Transcript of Plea was ambiguous, the only evidence of ambiguity we see is that the top line of the Transcript of Plea form lists the file number of the 2008 indictment but not that of the 2010 indictment. However, if the stipulation to the aggravating factor was to apply to the 2008 indictment only, it

follows that a separate Transcript of Plea form covering the 2010 indictment would also have been executed, omitting that stipulation. Instead, Question 12 of the Transcript of Plea asks, "Do you understand that you are pleading guilty to the charges shown below?" Beneath this question, the two counts in the 2010 indictment are set out individually, as are the two counts in the 2008 indictment. The word, "Yes," is handwritten in response to this question. The parties skirmish in their briefs over the fact that the paperwork, the judge, and attorneys referred sometimes to "the offense" and other times to "the offenses," but we do not find this differing wording persuasive. Instead, we conclude that, in light of the evidence found within the Transcript of Plea, along with the facts of the case and the behavior of the parties, defendant unambiguously stipulated that the aggravating factor would apply to both indictments.

Even if defendant initially misunderstood the plea or if the Transcript of Plea were ambiguous, the sentencing hearing ultimately provided clarity. Although defendant argues that the prosecutor's language at the sentencing hearing preserved the purported ambiguity in the Transcript of Plea because the prosecutor did not explicitly ask that both sentences be aggravated on the basis of the stipulation, the record indicates that the prosecutor sought aggravated sentences for each consolidated offense, asking the trial court to "find that this is an aggravated crime" and to sentence defendant "in the aggravated range to a sentence of 196 to 245 [months] followed by another sentence of 196 to 245 [months]," the

maximum aggravated sentences available. *See* N.C.G.S. § 15A-1340.17 (2007).

Moreover, defendant's presentation to the trial court at the sentencing hearing

concerning the application of mitigating factors to the two indictments indicated an

expectation that both the mitigating and aggravating factors to which the parties

stipulated would be applied in each indictment. After asking the court to find three

more mitigating factors in addition to the three to which the State had stipulated,

defendant said: "I ask [the court] to find the presence of these six statutory factors

in mitigation and that you find them present *in both of those cases.* My view of the

matter is that when you add all those things up, they do outweigh the one

aggravating factor." (Emphasis added.). Defendant never argued that the sentence

on the 2010 indictment should not be aggravated; instead he argued that mitigating

factors outweighed the stipulated aggravating factor. We believe defendant could

have had little doubt that the Transcript of Plea's terms and conditions applied to

all the charges brought against him.

Additionally, any belief on defendant's part that he had stipulated to an

aggravated sentence only on the 2008 indictment was revealed to be mistaken when

the trial court stated that "an aggravated sentence is justified for these offenses,"

then imposed consecutive aggravated sentences on both indictments. Despite

defendant's contention that he did not have time to object after sentence was

imposed because the judge immediately left the bench, the record shows defendant

had ample opportunity to bring any confusion to the attention of the trial court during the sentencing hearing.

Defendant next contends that he did not realize that the sentence on the 2010 indictment was aggravated on the basis of the stipulation until he saw the corresponding "Felony Judgment Findings of Aggravating and Mitigating Factors" signed by the judge after the completion of the sentencing hearing. According to defendant, until he saw the form he believed the sentence in the 2010 indictment was aggravated because of the facts of the case, not the stipulation. Leaving aside the question whether the judge could have imposed an aggravated sentence without a jury finding or a stipulation, we note that this form was signed on 15 November 2010, the same day as the sentencing hearing. So even if defendant left the sentencing hearing without realizing the trial court's basis for aggravating the sentence on the 2010 indictment, the information that would have permitted him to file a timely Motion for Appropriate Relief pursuant to N.C.G.S § 15A-1414 or take other appropriate remedial action was available shortly thereafter. Accordingly, we are not persuaded that defendant did not have an opportunity to object to the sentence.

Having concluded that the Transcript of Plea was not ambiguous, we now consider the other arguments raised by defendant. Defendant argues that the trial court did not follow the statutory requirements for taking a plea because it failed to determine whether the State intended to seek an aggravated sentence for each

indictment, in accordance with N.C.G.S. § 15A-1022.1(a). The record indicates that at the plea hearing the trial court went over the terms of the plea agreement with defendant and asked defendant directly if he understood its terms, and defendant responded, "Yes." During the hearing, the trial court also asked defendant if he stipulated to the aggravating factor, and defendant again answered, "Yes." We find the trial court's procedure satisfied the requirements of section 15A-1022.1.

Finally, defendant contends that the State failed to present sufficient evidence to support an aggravated sentence for the offenses listed in the 2010 indictment. However, the evidence proffered to the trial court indicated that defendant, who referred to the victim in e-mails as his "twin," was brought into the conspiracy as a friend of the victim, participated in hatching the details of the plan to strangle the victim, and agreed to incapacitate the victim so the others could finish him off. This evidence was sufficient to establish that, as to the evidence supporting both indictments, defendant took advantage of his position of trust or confidence to place the victim in a vulnerable position.

We find no evidence that defendant misunderstood the plea agreement, that he stipulated that the aggravating factor would be applied only to the 2008 indictment, or that the sentence was unlawfully imposed. We reverse the portion of the Court of Appeals opinion that vacated defendant's sentence on the 2010 indictment. We remand to the Court of Appeals to reinstate the original sentence

imposed by the trial court and to consider the remaining issues raised by defendant on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice BEASLEY did not participate in the consideration or decision of this case.