STROUD, Judge.
 

 *345
 
 Defendant, Eric Hendricksen ("defendant") appeals from his conviction of robbery with a dangerous weapon. On appeal, defendant argues that the trial court erred by imposing punishment for robbery with a dangerous weapon where he had previously pled guilty to two counts of misdemeanor possession of stolen goods and the stolen goods were obtained in the robbery. We find no error in the trial court's judgment.
 

 I. Background
 

 The evidence showed that on the night of 28 July 2014, a masked man armed with a gun, later identified as defendant, entered the I-40
 
 *346
 
 Supergas gas station and convenience store in Johnston County, North Carolina. Defendant demanded money from the clerk behind the counter, Sunny Kapoor. When Mr. Kapoor informed defendant that the cash register was locked and had to be opened up, defendant jumped over the counter with a bag in one hand and a gun in the other, demanding the money from the register. Mr. Kapoor opened the register and defendant took the money from the register. Defendant took approximately $1,900.00 in cash from the register. After taking the money, defendant then demanded lottery tickets. The lottery ticket dispensers were locked, and defendant forced Mr. Kapoor to open them at gunpoint. Defendant then stuffed lottery tickets into his bag. After defendant had taken the cash and lottery tickets, he told Mr. Kapoor to get down and he left the store. Once outside of the store, defendant fired his gun. After the robbery, defendant went to an acquaintance's home and said he had "just done a job and had a pocket full of money."
 

 On 30 July and 31 July 2014, defendant traveled to locations in Harnett County where he attempted to cash out lottery tickets he acquired from the robbery. Detective Rodney Byrd of the Johnston County Sherriff's Office was lead investigator of the 28 July 2014 armed robbery of the I-40 Supergas in Benson. Detective Byrd called the North Carolina Education Lottery to provide information of the theft so the system could track the stolen lottery tickets. On 30 July 2014, Detective Byrd received a call from the North Carolina Lottery informing him that a flagged lottery ticket had been cashed at a Wilco Hess store in Harnett County. On the way to investigate that report, Detective
 
 *393
 
 Byrd received another call from the North Carolina Lottery informing him there had been an attempt to cash a second flagged lottery ticket at a Kangaroo store, also in Harnett County.
 

 During his investigation, Detective Byrd obtained a search warrant for defendant's residence. In the search of the residence, Detective Byrd found incriminating evidence, and he seized clothing and a gun based upon his observation of the surveillance footage from the Supergas on the night of the robbery.
 

 On 3 September 2014, arrest warrants were issued for defendant in both Johnston and Harnett counties. Defendant was charged in Johnston County for robbery with a dangerous weapon and second degree kidnapping and in Harnett County with five counts of misdemeanor possession of stolen goods, four counts of felony attempted obtaining property by false pretenses, and one count of felony obtaining property by false pretenses. On 2 December 2014, a Johnston County grand jury returned
 
 *347
 
 a true bill on an indictment of defendant for robbery with a dangerous weapon and second degree kidnapping.
 

 On 17 March 2015, defendant pled guilty in Harnett County to two counts of misdemeanor possession of stolen goods, and Harnett County dismissed the attempted obtaining property by false pretenses charge. The stolen goods identified in the Harnett County case were two lottery tickets.
 

 Defendant was tried on the Johnston County charges in Johnston County Superior Court on 19 January 2016. At the close of the State's evidence, defendant moved to dismiss the charges, and the trial court granted the dismissal of the charge of second degree kidnapping. Defendant renewed his motion to dismiss the robbery charge at the close of all the evidence, but the trial court once again denied his request. The jury ultimately returned a verdict of guilty on robbery with a dangerous weapon.
 

 Defendant once again raised issues relating to the charge of robbery with a dangerous weapon during sentencing on the grounds that he had previously been punished for misdemeanor possession of stolen goods in Harnett County several months earlier. After defendant presented evidence at the sentencing hearing to support his argument he should not sustain multiple punishments, the Court overruled defendant's argument and imposed an active sentence for robbery with a dangerous weapon of 70 to 96 months imprisonment with credit on the judgment given for 101 days spent in confinement. Defendant timely appealed to this Court.
 

 II. Analysis
 

 Defendant's sole argument on appeal is that the trial court erred by imposing punishment for robbery with a dangerous weapon after defendant had previously been punished for possession of stolen goods, where the stolen goods were obtained in the course of that same robbery. Whether multiple punishments were imposed contrary to legislative intent presents a question of law, reviewed
 
 de novo
 
 by this Court.
 
 State v. Khan,
 

 366 N.C. 448
 
 , 453,
 
 738 S.E.2d 167
 
 , 171 (2013) ;
 
 State v. Moses,
 

 205 N.C. App. 629
 
 , 638-40,
 
 698 S.E.2d 688
 
 , 695-97 (2010).
 

 Defendant contends the legislature did not intend to punish a defendant twice for robbery and possession of stolen goods acquired by that robbery. Defendant maintains that he is protected from multiple punishments based on legislative intent, rather than the Double Jeopardy Clause of the Fifth Amendment. On appeal, defendant relies heavily on cases that are based upon the Double Jeopardy Clause. Defendant justifies using cases that rely on Double Jeopardy by citing to our Supreme
 
 *348
 
 Court's explanation that Double Jeopardy and legislative intent in this context are essentially the same principles:
 

 The argument advanced by defendant has been presented under various titles: double jeopardy, lesser-included offense, an element of the offense, multiple punishment for the same offense, merged offenses, etc. The defendant and the State have briefed and argued the issue as one of "double jeopardy." We choose to avoid any lengthy discussion of the appropriate title, as it is the principle of law rather than the characterization of the issue that is important.
 

 *394
 

 State v. Gardner,
 

 315 N.C. 444
 
 , 451,
 
 340 S.E.2d 701
 
 , 707 (1986) ;
 
 see also
 

 Ohio v. Johnson,
 

 467 U.S. 493
 
 , 499,
 
 104 S.Ct. 2536
 
 , 2541,
 
 81 L.Ed.2d 425
 
 , 433 (1984) ("the question under the Double Jeopardy Clause whether punishments are multiple is essentially one of legislative intent") (citation and quotation marks omitted). We will follow the reasoning of our Supreme Court in
 
 Gardner
 
 and focus on the "principle of law" instead of the exact "characterization of the issue[.]"
 
 See
 

 Gardner,
 

 315 N.C. at 451
 
 ,
 
 340 S.E.2d at 707
 
 .
 

 The United States Supreme Court described in
 
 Blockburger v. United States
 
 the test for determining whether certain activities constitute two offenses or one: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."
 
 Blockburger v. United States
 
 ,
 
 284 U.S. 299
 
 , 304,
 
 52 S.Ct. 180
 
 , 182,
 
 76 L.Ed. 306
 
 , 309 (1932). "North Carolina has followed the United States Supreme Court's 'same elements' test from
 
 Blockburger
 
 ."
 
 State v. Sparks
 
 ,
 
 182 N.C. App. 45
 
 , 47,
 
 641 S.E.2d 339
 
 , 341 (2007),
 
 aff'd
 
 ,
 
 362 N.C. 181
 
 ,
 
 657 S.E.2d 655
 
 (2008).
 

 The Fifth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, protects against double jeopardy, which includes multiple punishments for the same offense. The test of double jeopardy, or former jeopardy, is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. Hence, the plea of former jeopardy, to be good, must be grounded on the "same offense" both in law and in fact, and it is not sufficient that the two offenses
 
 *349
 
 grew out of the same transaction. If evidence in support of the facts alleged in the second indictment would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise not. However, if proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained[.]
 

 State v. Hall
 
 ,
 
 203 N.C. App. 712
 
 , 716-17,
 
 692 S.E.2d 446
 
 , 450 (2010) (citations, quotation marks, and brackets omitted).
 

 At issue in this case is whether the legislature intended the offenses of robbery with a dangerous weapon and possession of stolen goods to be separate and distinct offenses, and whether after looking at the facts of this case the Johnston County robbery charge is separate and distinct from the possession of stolen property offense he pled guilty to in Harnett County.
 

 A. Possession of Stolen Goods vs. Robbery
 

 The essential elements of possession of stolen goods are: "(1) possession of personal property, (2) valued at more than $400.00, (3) which has been stolen, (4) the possessor knowing or having reasonable grounds to believe the property to have been stolen, and (5) the possessor acting with a dishonest purpose."
 
 State v. Davis,
 

 302 N.C. 370
 
 , 373,
 
 275 S.E.2d 491
 
 , 493 (1981). The key elements of robbery with a dangerous weapon are governed by
 
 N.C. Gen. Stat. § 14-87
 
 (a) (2015), and this Court has held "that the essential elements of the crime of robbery with a dangerous weapon are: (1) the unlawful taking
 
 or attempted taking
 
 of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim."
 
 State v. Van Trusell,
 

 170 N.C. App. 33
 
 , 37,
 
 612 S.E.2d 195
 
 , 198 (2005) (citation and quotation marks omitted).
 

 Defendant relies upon
 
 State v. Perry
 
 ,
 
 305 N.C. 225
 
 ,
 
 287 S.E.2d 810
 
 (1982),
 
 overruled in part on other grounds
 
 ,
 
 State v. Mumford
 
 ,
 
 364 N.C. 394
 
 , 402,
 
 699 S.E.2d 911
 
 , 916 (2010), to illustrate when our Supreme Court has considered the legislative intent behind the enactment of the statute criminalizing possession of stolen goods. The Supreme Court noted in
 
 Perry
 
 that prior to the enactment of
 
 N.C. Gen. Stat. § 14-71.1
 
 in 1977, mere possession of stolen property was not a crime.
 

 *395
 

 Perry
 
 ,
 
 305 N.C. at 235
 
 ,
 
 287 S.E.2d at 816
 
 . But known dealers in stolen goods were going unprosecuted in many cases, as it was difficult to prove possession
 
 *350
 
 recent enough after larceny to raise the presumption that the dealer stole the property.
 
 Id
 
 . In response, our legislature enacted the statute addressing possession of stolen goods laws.
 
 Id
 
 . The
 
 Perry
 
 Court held:
 

 [H]aving determined that the crimes of larceny, receiving, and possession of stolen property are separate and distinct offenses, but having concluded that the Legislature did not intend to punish an individual for receiving or possession of the same goods that he stole, we hold that, though a defendant may be indicted and tried on charges of larceny, receiving, and possession of the same property, he may be convicted of only one of those offenses.
 

 Id.
 
 at 236-37,
 
 287 S.E.2d at 817
 
 . Had our legislature disagreed with
 
 Perry
 
 , it would have acted based upon that opposition. But "[i]n the nearly thirty years since
 
 Perry
 
 was decided, the Legislature has made no substantive changes to
 
 N.C. Gen. Stat. § 14-71.1
 
 that would indicate its disfavor with the
 
 Perry
 
 Court's interpretation of that statute."
 
 Moses,
 

 205 N.C. App. at 640
 
 ,
 
 698 S.E.2d at 696
 
 . As stated in
 
 Perry
 
 , the legislature created the statutory offense of possession of stolen goods as a substitute for the common law offense of larceny in those situations in which the State could not furnish sufficient evidence that the defendant stole the property.
 
 Perry,
 

 305 N.C. at 235
 
 ,
 
 287 S.E.2d at 816
 
 . Considering the historical background of this statute, "we conclude that the Legislature also did not intend to subject a defendant to multiple punishments for both robbery and the possession of stolen goods that were the proceeds of the same robbery."
 
 Moses,
 

 205 N.C. App. at 640
 
 ,
 
 698 S.E.2d at 696
 
 .
 

 Under some factual circumstances, had defendant pled guilty to more than two counts of misdemeanor possession of stolen goods, defendant's judgment would be vacated for robbery with a dangerous weapon. But the facts here are quite different from those in the cases cited by defendant, since defendant only pled guilty to two counts of misdemeanor possession of stolen goods and is appealing robbery of money and hundreds of additional lottery tickets which were not the subject of the previous trial. Principles of legislative intent only apply to proscribe punishment for possession during the course of the same conduct, and where the property is the "same property."
 
 Perry,
 

 305 N.C. at 234
 
 ,
 
 287 S.E.2d at 816
 
 . That is not the case here.
 

 B. Dissimilar offenses
 

 The offense for which defendant pled guilty at his previous trial in another county is neither for the same conduct nor for the same property. Rather, the possession to which defendant pled guilty was solely
 
 *351
 
 related to his attempt at cashing in two lottery tickets a few days after the robbery in Johnston County and was adjudicated in a separate trial in another county, with different facts and evidence.
 

 Even though defendant is arguing that the lottery tickets he attempted to cash in the next county over were the same lottery tickets he obtained during the commission of the robbery with a dangerous weapon, it is still permissible for a defendant to be convicted and punished for multiple-thus different-possessions of the same illegal item. Offenses of possession separate in time and locale can support separate convictions and punishments.
 
 See
 

 State v. Rozier
 
 ,
 
 69 N.C. App. 38
 
 , 54-55,
 
 316 S.E.2d 893
 
 , 904 (1984) ("Other jurisdictions which have considered the question appear to have adopted the rule that the possession offenses must be separate in time and space to warrant separate convictions. Whether particular circumstances of possession constitute a single criminal act or several is a determination of a factual nature to be made by the trial court. North Carolina effectively follows the same rule by investing the trial court with discretion to quash duplicitous indictments.... The circumstances of each case will determine whether separate offenses may be properly charged.").
 

 Here, each offense dealt with a different crime and specifically a different possession of the two tickets.
 
 See
 

 State v. Alston,
 

 323 N.C. 614
 
 , 616,
 
 374 S.E.2d 247
 
 , 249 (1988) (the defendant's possession of a firearm during an armed robbery was a different offense than
 
 *396
 
 his earlier possession and was not collaterally estopped.). The facts to support each possession during each crime, on different days and different locations, were different, and the evidence sufficient to show these crimes were committed was not identical.
 
 See
 

 State v. Crump,
 

 178 N.C. App. 717
 
 , 722,
 
 632 S.E.2d 233
 
 , 236 (2006) (each new violation of the statute for possession of a firearm by a felon constitutes a new offense);
 
 State v. Cumber
 
 ,
 
 32 N.C. App. 329
 
 , 337,
 
 232 S.E.2d 291
 
 , 297 (1977) (citations omitted) ("[D]ouble jeopardy is not violated merely because the same evidence is relevant to show both crimes."). The burden is on the defendant to show continuous possession in such circumstances. Here, defendant did not show such evidence, either at the hearing outside the presence of the jury, or in front of the jury.
 

 And even if defendant pled guilty to possessing two of the tickets he may have stolen during the robbery with a dangerous weapon two days prior, the armed robbery and items stolen included a substantial amount of additional different property. Defendant here was charged with robbery with a dangerous weapon in which he "unlawfully, willfully, and feloniously did steal, take, and carry away another's personal property,
 
 *352
 
 US currency, approximately $1900, and Lottery tickets from Nita, LLC d/b/a I-40 Supergas when Sunny Kapoor was present." The jury heard testimony from Mr. Kapoor that on the night of the robbery, an armed masked man, later found to be defendant, entered the I-40 Supergas and "demand[ed] the
 
 money.
 
 " (Emphasis added). Mr. Kapoor further testified that he told defendant the register was locked and had to be opened, and that defendant jumped over the counter and kept demanding the money from the drawer. The jury heard that defendant took approximately $1,900.00 in cash from the register at the I-40 Supergas on the night of the robbery.
 

 Regarding the lottery tickets, the jury heard testimony of a witness from the North Carolina Education Lottery, Mr. Pekrul, about how many tickets were stolen from the I-40 Supergas during the commission of the robbery. Mr. Pekrul testified that after adding the tickets up several times, "it's in the neighborhood of eight hundred or so[.]" The jury's verdict was reached after having heard evidence that included all of the items defendant stole on the night of the robbery at gunpoint. Those items were identified as approximately $1,900.00 in cash and approximately 800 lottery tickets. Even assuming defendant could not be punished for possession of lottery tickets 1 and 2 after pleading guilty to their possession in the previous trial, nothing prohibits his subsequent punishment for robbery with a dangerous weapon where he stole money and lottery tickets 3 through 800. For defendant's argument to prevail, he would need to show that the legislature intended an outcome in which a guilty plea on misdemeanor possession of two stolen lottery tickets would prohibit punishment for a conviction of robbery with a dangerous weapon where the defendant stole $1,900.00 in cash and 800 separate lottery tickets. This result is not supported by this Court's prior opinions or our Supreme Court in
 
 Perry
 
 or
 
 Moses.
 
 Defendant has failed to meet his burden in proving that he was punished twice for the exact same property, conduct, or offense.
 

 C. Defendant's opposition towards other remedies
 

 Assuming the two tickets were the exact same and
 
 only
 
 property stolen during the armed robbery, defendant still cannot be heard to complain because he repeatedly opposed other remedies. Ordinarily, a defendant cannot claim prejudice resulting from his own conduct. N.C. Gen. Stat. § 15A-1443(c) (2015) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct.");
 
 see also
 

 State v. Gay,
 

 334 N.C. 467
 
 , 485,
 
 434 S.E.2d 840
 
 , 850 (1993) ("A defendant may not complain of prejudice resulting from her
 
 *353
 
 own conduct. Such invited error does not merit relief." (Citations, quotation marks, and brackets omitted)).
 

 The State made several attempts to rectify any complaint or ambiguity by seeking several other remedies. First, the State attempted to avoid the mention at trial of the two lottery tickets that resulted in defendant's guilty plea to possession in Harnett County, and the prosecutor stated that she would
 
 *397
 
 proceed on the other items defendant stole during the robbery. Defendant opposed that offer. Second, the State offered to amend the indictment so the mention of the two Harnett County lottery tickets would be omitted. That would mean defendant would be tried only for the cash and other lottery tickets he stole during the robbery. Again, defendant opposed this alternative remedy. Finally, the State sought to have a special verdict sheet to reflect that defendant stole $1,900.00 in cash and the lottery tickets other than the two to which he pled guilty in Harnett County. Once again, defendant opposed this proposal and his counsel stated: "I think he is either guilty of armed robbery or not guilty." Each of these proposed remedies would have prevented defendant from facing the possibility of being punished twice for any of the same conduct. Yet, defendant opposed each offer by the State. Accordingly, we hold that the trial court did not err by imposing punishment for the offense of robbery with a dangerous weapon in this case.
 

 IV. Conclusion
 

 For the reasons stated above, we find no error in the trial court's judgment.
 

 NO ERROR.
 

 Judges BRYANT and DAVIS concur.