IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-132

Filed: 3 November 2020

Harnett County, No. 17 CRS 52700

STATE OF NORTH CAROLINA

v.

LORRIE LASHANN RAY

Appeal by Defendant from judgment entered 28 August 2019 by Judge Gale M. Adams in Harnett County Superior Court. Heard in the Court of Appeals 6 October 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Ronald D. Williams, II, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Lorrie Lashann Ray appeals from judgment entered upon guilty verdicts for insurance fraud and obtaining property by false pretenses. Defendant argues that the trial court erred by (1) imposing a sentence based on both offenses and (2) improperly delegating authority to Defendant's probation officer by failing to set a completion deadline for the active term of the sentence as a condition of special probation. We discern no error.

## I. Procedural History

Defendant was indicted on charges of insurance fraud, obtaining property by false pretenses, and attempting to obtain property by false pretenses. At trial, the State voluntarily dismissed the attempt charge. The jury found Defendant guilty of insurance fraud and obtaining property by false pretenses. The trial court consolidated the convictions for judgment and sentenced Defendant to 10 to 21 months of imprisonment, suspended for 24 months of supervised probation. As a condition of probation, the trial court ordered Defendant to serve a 60-day active term.

Defendant gave notice of appeal in open court.

## II. Factual Background

The State's evidence tended to show the following: Defendant's home in Dunn, North Carolina, was damaged in the fall of 2016 by Hurricane Matthew. Defendant filed a claim on 24 October 2016 with her home insurance company, Universal Property and Casualty Insurance Company ("Insurer"). Defendant claimed her roof, windows, doors, porch, and electronics were damaged; there were leaks throughout the home due to the roof damage; she was living in her barn; and she lost all of the food in her refrigerator due to spoilage. An insurance adjustor inspected the home on 2 November and completed a report the next day, which included photographs and stated that Hurricane Matthew caused wind damage to the exterior and interior of

the home estimated at $1,578.99, that the house was habitable, and that living expenses would not be expected. The insurance adjustor issued a final report on 21 November showing the gross claim of $1,578.99 less the deductible, resulting in an amount payable to Defendant of $452.99. The Insurer issued a check for $452.99 to Defendant.

Defendant contacted the Insurer on 6 December by phone, disputing the amount awarded on her claim and requesting that the Insurer perform another home inspection. The next day, Defendant submitted to the Insurer an inventory of food loss totaling $1,350. On 21 December, Defendant submitted estimates for roof repairs for $6,240, window repairs for $1,520, and a door repair for $427. Defendant also submitted (1) a handwritten lease agreement signed by Defendant and her stepfather, Robert McEachin, stating that Defendant would pay $100 per day to McEachin to stay in his home; and (2) handwritten documents purporting to be 76 paid daily receipts beginning 11 October 2016 for $100 each, signed by McEachin and stating that Defendant was living in his home. Twice in January 2017, Defendant contacted the Insurer claiming reimbursement for living expenses in the amount of $8,300. Defendant faxed the handwritten lease agreement and receipts totaling $8,300, explained that she was paying cash to McEachin, and gave the Insurer McEachin's phone number. On 1 February, Defendant called the Insurer explaining

that she was going to be evicted from where she was staying and would need to spend $150 per night on a hotel.

After reviewing Defendant's claims, the Insurer made three additional payments to Defendant: $5,608.01 for additional home repairs; $500 for spoiled food; and $2,000 for living expenses, based on 20 days under the lease agreement that Defendant provided to the Insurer.

Defendant called McEachin and told him that the Insurer was going to call him to ask him a few questions, and that "all [he] had to do was just tell them yes." McEachin received a phone call from the Insurer but did not answer or return it. A representative of the Insurer visited McEachin at his home; showed him the receipts that Defendant had submitted; asked him if he had signed them, to which he replied "no"; and had him sign his name on a piece of paper. McEachin told the insurance representative that he did not have a lease agreement with Defendant and that Defendant had not stayed with him between October 2016 and January 2017. McEachin testified at trial that he did not write or sign the purported receipts and that Defendant did not stay in his house.

### III. Discussion

Defendant argues that the trial court erred by sentencing her for both obtaining property by false pretenses and insurance fraud for the same alleged misrepresentation. Defendant also argues that the trial court improperly delegated

its authority to Defendant's probation officer by failing to set a completion deadline for the active term of Defendant's split sentence.

We reject the State's argument that these issues are not properly preserved for appellate review. When a defendant alleges that a trial court erred by imposing a sentence that is invalid as a matter of law, the defendant's argument is preserved for appellate review, even if the defendant failed to object on this basis at sentencing. *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2019); *State v. Meadows*, 371 N.C. 742, 747, 821 S.E.2d 402, 406 (2018) ("Although this Court has held several subdivisions of subsection 15A-1446(d) to be unconstitutional encroachments on the rulemaking authority of the Court, subdivision (18) is not one of them."); *State v. Mumford*, 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010) ("[N.C. Gen. Stat. § 15A-1446(d)(18)] does not conflict with any specific provision in our appellate rules and operates as a 'rule or law' under [North Carolina Rule of Appellate Procedure] 10(a)(1), which permits review of this issue").[1]

---

[1] Embedded within the discussion in Defendant's appellate brief of her challenge to sentencing is a separate argument that legislative intent bars two *convictions* in this case. Defendant failed to preserve this argument for appellate review by failing to object to the jury instruction on both charges at trial. *See* N.C. R. App. P. 10(a)(1). Further, we decline to grant Defendant's request that we invoke Rule 2 in order to review this argument. *See* N.C. R. App. P. 2. Declining review of this argument does not result in manifest injustice in this case because we would uphold both convictions for similar reasons we uphold the trial court's sentence, as discussed below.

*A. Sentencing Based on Both Convictions*

Defendant contends that the trial court erred by sentencing her based on both the conviction for obtaining property by false pretenses and the conviction for insurance fraud, arising from the same alleged misrepresentation. Defendant argues that the "General Assembly did not intend to doubly punish defendants for making a single misrepresentation merely because the victim happened to be an insurance company."

"Whether . . . multiple punishments may be imposed when a defendant, in a single trial, is convicted of multiple offenses when some are fully, factually embraced within others is to be determined on the basis of legislative intent." *State v. Gardner*, 315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986). Where the legislature "clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court *in a single trial* may impose cumulative punishments under the statutes." *State v. Pipkins*, 337 N.C. 431, 433-34, 446 S.E.2d 360, 362 (1994) (citations omitted). "Whether multiple punishments were imposed contrary to legislative intent presents a question of law, reviewed *de novo* by this Court." *State v. Hendricksen*, 257 N.C. App. 345, 347, 809 S.E.2d 391, 393 (2018) (citations omitted).

"The traditional means of determining the intent of the legislature where the concern is . . . one of multiple punishments for two convictions in the same trial

include the examination of the subject, language, and history of the statutes." *Gardner*, 315 N.C. at 461, 340 S.E.2d at 712.

With regard to *language*, "[t]he legislative intent of the statutes defining the offenses in question can be extrapolated from the provisions of each statute." *State v. Banks*, 367 N.C. 652, 657, 766 S.E.2d 334, 338 (2014) (citations omitted). "When a statute is unambiguous, this Court will give effect to the plain meaning of the words without resorting to judicial construction." *Id.* (citations omitted).

The elements of insurance fraud are: "(1) a defendant presents a statement for a claim under an insurance policy; (2) that statement contained false or misleading information; (3) the defendant knows the statement is false or misleading; and, (4) the defendant acted with the intent to defraud." *State v. Koke*, 264 N.C. App. 101, 107, 824 S.E.2d 887, 892 (2019) (citing N.C. Gen. Stat. § 58-2-161(b)) (other citation omitted). The elements of obtaining property by false pretenses are: "(1) A false representation of a past or subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which the defendant obtains or attempts to obtain anything of value from another person." *State v. Saunders*, 126 N.C. App. 524, 528, 485 S.E.2d 853, 855-56 (1997) (brackets and citation omitted). *See* N.C. Gen. Stat. § 14-100(a) (2019).

While both offenses require a misrepresentation intended to deceive, they each require an element not required by the other. Insurance fraud requires proving that

the defendant presented a statement in support of a claim for payment under an insurance policy; obtaining property by false pretenses requires proving that the defendant's misrepresentation did in fact deceive. Based on the separate and distinct elements that must be proven, the legislature clearly expressed its intent to proscribe and punish a misrepresentation intended to deceive under both statutes. *See Banks*, 367 N.C. at 659, 766 S.E.2d at 339 (Given the separate and distinct elements of second-degree rape and statutory rape, "it is clear that the legislature intended to separately punish the act of intercourse with a victim who, because of her age, is unable to consent to the act, and the act of intercourse with a victim who, because of a mental disability or mental incapacity, is unable to consent to the act" (citations omitted)).

With regard to the *subject* of the two crimes, "it is clear that the conduct of the defendant is violative of two separate and distinct social norms." *Gardner*, 315 N.C. at 461, 340 S.E.2d at 712. Where obtaining property by false pretenses is generally likely to harm a single victim, a broader class of victims is harmed by insurance fraud. Fraud perpetrated on insurers through the submission of false claims increases insurers' cost of doing business—beyond simply the financial loss of having paid an insured a finite amount on a fraudulent claim—because it requires insurers to investigate fraudulent claims and establish ongoing processes for avoiding future fraudulent claims. These costs must be passed on to consumers of insurance through

increased premiums.  Hence, there are policy concerns unique to insurance fraud that the legislature seeks to achieve by criminalizing this activity.

Finally, regarding the *history* of the treatment of the two crimes for sentencing purposes, this Court has sustained sentencing for convictions of obtaining property by false pretenses and insurance fraud arising from the same misrepresentation.  *See, e.g.*, *Koke*, 264 N.C. App. at 105, 824 S.E.2d at 890; *State v. Locklear*, 259 N.C. App. 374, 816 S.E.2d 197 (2018); *State v. Pittman*, 219 N.C. App. 512, 725 S.E.2d 25 (2012). "Had conviction and punishment of both crimes in a single trial not been intended by our legislature, it could have addressed the matter during the course of these many years." *Gardner*, 315 N.C. at 462-63, 340 S.E.2d at 713.

Accordingly, because our legislature has expressed its intent to proscribe and punish the same misrepresentation under both insurance fraud and obtaining property by false pretenses, the trial court did not err by consolidating both Class H felony convictions for judgment and sentencing Defendant in the high presumptive range for one Class H felony.

## B. Active Term of Sentence

Defendant argues that the trial court improperly delegated its authority to Defendant's probation officer by failing to set a completion deadline for the active term of Defendant's split sentence.  Defendant contends that this delegation of authority is not permitted by N.C. Gen. Stat. § 15A-1351(a).

Although "[a] challenge to a trial court's decision to impose a condition of probation is reviewed on appeal using an abuse of discretion standard," *State v. Chadwick*, 843 S.E.2d 263, 264 (N.C. Ct. App. 2020) (citation omitted), "[a]n alleged error in statutory interpretation is an error of law, and thus our standard of review for this question is *de novo*," *State v. Wainwright*, 240 N.C. App. 77, 79, 770 S.E.2d 99, 102 (2015) (citation omitted).

Under North Carolina's criminal statutes, a trial court may sentence a defendant to special probation as a form of intermediate punishment, under certain circumstances. N.C. Gen. Stat. § 15A-1351(a) (2019). When doing so,

> the court may suspend the term of imprisonment and place the defendant on probation . . . and in addition require that the defendant submit to a period or periods of imprisonment . . . at whatever time or intervals within the period of probation, consecutive or nonconsecutive, the court determines. . . . [T]he total of all periods of confinement imposed as an incident of special probation, but not including an activated suspended sentence, may not exceed one-fourth the maximum sentence of imprisonment imposed for the offense, and no confinement other than an activated suspended sentence may be required beyond two years of conviction.

*Id.*

Thus, under the statute, a period or periods of imprisonment must be "within the period of probation," and no portion of this imprisonment "may be required beyond two years of conviction." *Id.* Accordingly, the statute itself sets the outer limit, or completion deadline, of an active term as a condition of special probation as

the end of the period of probation or two years after the date of conviction, whichever comes first.

In this case, the trial court sentenced Defendant to 10 to 21 months of imprisonment, and suspended that sentence for 24 months of supervised probation. As a condition of probation, the trial court ordered Defendant to serve a 60-day active term. On the Judgment Suspending Sentence form (AOC-CR-603D), under Intermediate Punishments, the trial court selected Special Probation and checked box A, ordering an active term of 60 days to be served in the custody of the Sheriff of Harnett County. The trial court also checked box H, labeled "Other," and inserted the following: "TO SERVE 30 DAYS AT ONE TIME AND 30 DAYS AT ANOTHER TIME AS SCHEDULED BY PROBATION."

The trial court appropriately determined the "intervals within the period of probation" as two thirty-day periods, and the completion date is set by statute as 27 August 2021—which, in this case, is both the end of the two-year probationary period and two years from the date of conviction.

## IV. Conclusion

We conclude that the trial court did not err by imposing a sentence based on convictions for both obtaining property by false pretenses and insurance fraud based on the same misrepresentation, and the trial court did not err by failing to set a

completion deadline for the active term of Defendant's sentence as a condition of special probation.

NO ERROR.

Judges BRYANT and TYSON concur.