IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA20-132

 Filed: 3 November 2020

Harnett County, No. 17 CRS 52700

STATE OF NORTH CAROLINA

 v.

LORRIE LASHANN RAY

 Appeal by Defendant from judgment entered 28 August 2019 by Judge Gale M.

Adams in Harnett County Superior Court. Heard in the Court of Appeals 6 October

2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Ronald D.
 Williams, II, for the State-Appellee.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace
 Washington, for Defendant-Appellant.

 COLLINS, Judge.

 Defendant Lorrie Lashann Ray appeals from judgment entered upon guilty

verdicts for insurance fraud and obtaining property by false pretenses. Defendant

argues that the trial court erred by (1) imposing a sentence based on both offenses

and (2) improperly delegating authority to Defendant’s probation officer by failing to

set a completion deadline for the active term of the sentence as a condition of special

probation. We discern no error.
 STATE V. RAY

 Opinion of the Court

 I. Procedural History

 Defendant was indicted on charges of insurance fraud, obtaining property by

false pretenses, and attempting to obtain property by false pretenses. At trial, the

State voluntarily dismissed the attempt charge. The jury found Defendant guilty of

insurance fraud and obtaining property by false pretenses. The trial court

consolidated the convictions for judgment and sentenced Defendant to 10 to 21

months of imprisonment, suspended for 24 months of supervised probation. As a

condition of probation, the trial court ordered Defendant to serve a 60-day active

term.

 Defendant gave notice of appeal in open court.

 II. Factual Background

 The State’s evidence tended to show the following: Defendant’s home in Dunn,

North Carolina, was damaged in the fall of 2016 by Hurricane Matthew. Defendant

filed a claim on 24 October 2016 with her home insurance company, Universal

Property and Casualty Insurance Company (“Insurer”). Defendant claimed her roof,

windows, doors, porch, and electronics were damaged; there were leaks throughout

the home due to the roof damage; she was living in her barn; and she lost all of the

food in her refrigerator due to spoilage. An insurance adjustor inspected the home

on 2 November and completed a report the next day, which included photographs and

stated that Hurricane Matthew caused wind damage to the exterior and interior of

 -2-
 STATE V. RAY

 Opinion of the Court

the home estimated at $1,578.99, that the house was habitable, and that living

expenses would not be expected. The insurance adjustor issued a final report on

21 November showing the gross claim of $1,578.99 less the deductible, resulting in

an amount payable to Defendant of $452.99. The Insurer issued a check for $452.99

to Defendant.

 Defendant contacted the Insurer on 6 December by phone, disputing the

amount awarded on her claim and requesting that the Insurer perform another home

inspection. The next day, Defendant submitted to the Insurer an inventory of food

loss totaling $1,350. On 21 December, Defendant submitted estimates for roof

repairs for $6,240, window repairs for $1,520, and a door repair for $427. Defendant

also submitted (1) a handwritten lease agreement signed by Defendant and her

stepfather, Robert McEachin, stating that Defendant would pay $100 per day to

McEachin to stay in his home; and (2) handwritten documents purporting to be 76

paid daily receipts beginning 11 October 2016 for $100 each, signed by McEachin and

stating that Defendant was living in his home. Twice in January 2017, Defendant

contacted the Insurer claiming reimbursement for living expenses in the amount of

$8,300. Defendant faxed the handwritten lease agreement and receipts totaling

$8,300, explained that she was paying cash to McEachin, and gave the Insurer

McEachin’s phone number. On 1 February, Defendant called the Insurer explaining

 -3-
 STATE V. RAY

 Opinion of the Court

that she was going to be evicted from where she was staying and would need to spend

$150 per night on a hotel.

 After reviewing Defendant’s claims, the Insurer made three additional

payments to Defendant: $5,608.01 for additional home repairs; $500 for spoiled food;

and $2,000 for living expenses, based on 20 days under the lease agreement that

Defendant provided to the Insurer.

 Defendant called McEachin and told him that the Insurer was going to call him

to ask him a few questions, and that “all [he] had to do was just tell them yes.”

McEachin received a phone call from the Insurer but did not answer or return it. A

representative of the Insurer visited McEachin at his home; showed him the receipts

that Defendant had submitted; asked him if he had signed them, to which he replied

“no”; and had him sign his name on a piece of paper. McEachin told the insurance

representative that he did not have a lease agreement with Defendant and that

Defendant had not stayed with him between October 2016 and January 2017.

McEachin testified at trial that he did not write or sign the purported receipts and

that Defendant did not stay in his house.

 III. Discussion

 Defendant argues that the trial court erred by sentencing her for both

obtaining property by false pretenses and insurance fraud for the same alleged

misrepresentation. Defendant also argues that the trial court improperly delegated

 -4-
 STATE V. RAY

 Opinion of the Court

its authority to Defendant’s probation officer by failing to set a completion deadline

for the active term of Defendant’s split sentence.

 We reject the State’s argument that these issues are not properly preserved for

appellate review. When a defendant alleges that a trial court erred by imposing a

sentence that is invalid as a matter of law, the defendant’s argument is preserved for

appellate review, even if the defendant failed to object on this basis at sentencing.

See N.C. Gen. Stat. § 15A-1446(d)(18) (2019); State v. Meadows, 371 N.C. 742, 747,

821 S.E.2d 402, 406 (2018) (“Although this Court has held several subdivisions of

subsection 15A-1446(d) to be unconstitutional encroachments on the rulemaking

authority of the Court, subdivision (18) is not one of them.”); State v. Mumford, 364

N.C. 394, 403, 699 S.E.2d 911, 917 (2010) (“[N.C. Gen. Stat. § 15A-1446(d)(18)] does

not conflict with any specific provision in our appellate rules and operates as a ‘rule

or law’ under [North Carolina Rule of Appellate Procedure] 10(a)(1), which permits

review of this issue”).1

 1 Embedded within the discussion in Defendant’s appellate brief of her challenge to sentencing
is a separate argument that legislative intent bars two convictions in this case. Defendant failed to
preserve this argument for appellate review by failing to object to the jury instruction on both charges
at trial. See N.C. R. App. P. 10(a)(1). Further, we decline to grant Defendant’s request that we invoke
Rule 2 in order to review this argument. See N.C. R. App. P. 2. Declining review of this argument
does not result in manifest injustice in this case because we would uphold both convictions for similar
reasons we uphold the trial court’s sentence, as discussed below.

 -5-
 STATE V. RAY

 Opinion of the Court

A. Sentencing Based on Both Convictions

 Defendant contends that the trial court erred by sentencing her based on both

the conviction for obtaining property by false pretenses and the conviction for

insurance fraud, arising from the same alleged misrepresentation. Defendant argues

that the “General Assembly did not intend to doubly punish defendants for making a

single misrepresentation merely because the victim happened to be an insurance

company.”

 “Whether . . . multiple punishments may be imposed when a defendant, in a

single trial, is convicted of multiple offenses when some are fully, factually embraced

within others is to be determined on the basis of legislative intent.” State v. Gardner,

315 N.C. 444, 460, 340 S.E.2d 701, 712 (1986). Where the legislature “clearly

expresses its intent to proscribe and punish exactly the same conduct under two

separate statutes, a trial court in a single trial may impose cumulative punishments

under the statutes.” State v. Pipkins, 337 N.C. 431, 433-34, 446 S.E.2d 360, 362

(1994) (citations omitted). “Whether multiple punishments were imposed contrary to

legislative intent presents a question of law, reviewed de novo by this Court.” State

v. Hendricksen, 257 N.C. App. 345, 347, 809 S.E.2d 391, 393 (2018) (citations

omitted).

 “The traditional means of determining the intent of the legislature where the

concern is . . . one of multiple punishments for two convictions in the same trial

 -6-
 STATE V. RAY

 Opinion of the Court

include the examination of the subject, language, and history of the statutes.”

Gardner, 315 N.C. at 461, 340 S.E.2d at 712.

 With regard to language, “[t]he legislative intent of the statutes defining the

offenses in question can be extrapolated from the provisions of each statute.” State

v. Banks, 367 N.C. 652, 657, 766 S.E.2d 334, 338 (2014) (citations omitted). “When a

statute is unambiguous, this Court will give effect to the plain meaning of the words

without resorting to judicial construction.” Id. (citations omitted).

 The elements of insurance fraud are: “(1) a defendant presents a statement for

a claim under an insurance policy; (2) that statement contained false or misleading

information; (3) the defendant knows the statement is false or misleading; and,

(4) the defendant acted with the intent to defraud.” State v. Koke, 264 N.C. App. 101,

107, 824 S.E.2d 887, 892 (2019) (citing N.C. Gen. Stat. § 58-2-161(b)) (other citation

omitted). The elements of obtaining property by false pretenses are: “(1) A false

representation of a past or subsisting fact or a future fulfillment or event, (2) which

is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which

the defendant obtains or attempts to obtain anything of value from another person.”

State v. Saunders, 126 N.C. App. 524, 528, 485 S.E.2d 853, 855-56 (1997) (brackets

and citation omitted). See N.C. Gen. Stat. § 14-100(a) (2019).

 While both offenses require a misrepresentation intended to deceive, they each

require an element not required by the other. Insurance fraud requires proving that

 -7-
 STATE V. RAY

 Opinion of the Court

the defendant presented a statement in support of a claim for payment under an

insurance policy; obtaining property by false pretenses requires proving that the

defendant’s misrepresentation did in fact deceive. Based on the separate and distinct

elements that must be proven, the legislature clearly expressed its intent to proscribe

and punish a misrepresentation intended to deceive under both statutes. See Banks,

367 N.C. at 659, 766 S.E.2d at 339 (Given the separate and distinct elements of

second-degree rape and statutory rape, “it is clear that the legislature intended to

separately punish the act of intercourse with a victim who, because of her age, is

unable to consent to the act, and the act of intercourse with a victim who, because of

a mental disability or mental incapacity, is unable to consent to the act” (citations

omitted)).

 With regard to the subject of the two crimes, “it is clear that the conduct of the

defendant is violative of two separate and distinct social norms.” Gardner, 315 N.C.

at 461, 340 S.E.2d at 712. Where obtaining property by false pretenses is generally

likely to harm a single victim, a broader class of victims is harmed by insurance fraud.

Fraud perpetrated on insurers through the submission of false claims increases

insurers’ cost of doing business—beyond simply the financial loss of having paid an

insured a finite amount on a fraudulent claim—because it requires insurers to

investigate fraudulent claims and establish ongoing processes for avoiding future

fraudulent claims. These costs must be passed on to consumers of insurance through

 -8-
 STATE V. RAY

 Opinion of the Court

increased premiums. Hence, there are policy concerns unique to insurance fraud that

the legislature seeks to achieve by criminalizing this activity.

 Finally, regarding the history of the treatment of the two crimes for sentencing

purposes, this Court has sustained sentencing for convictions of obtaining property

by false pretenses and insurance fraud arising from the same misrepresentation. See,

e.g., Koke, 264 N.C. App. at 105, 824 S.E.2d at 890; State v. Locklear, 259 N.C. App.

374, 816 S.E.2d 197 (2018); State v. Pittman, 219 N.C. App. 512, 725 S.E.2d 25 (2012).

“Had conviction and punishment of both crimes in a single trial not been intended by

our legislature, it could have addressed the matter during the course of these many

years.” Gardner, 315 N.C. at 462-63, 340 S.E.2d at 713.

 Accordingly, because our legislature has expressed its intent to proscribe and

punish the same misrepresentation under both insurance fraud and obtaining

property by false pretenses, the trial court did not err by consolidating both Class H

felony convictions for judgment and sentencing Defendant in the high presumptive

range for one Class H felony.

B. Active Term of Sentence

 Defendant argues that the trial court improperly delegated its authority to

Defendant’s probation officer by failing to set a completion deadline for the active

term of Defendant’s split sentence. Defendant contends that this delegation of

authority is not permitted by N.C. Gen. Stat. § 15A-1351(a).

 -9-
 STATE V. RAY

 Opinion of the Court

 Although “[a] challenge to a trial court’s decision to impose a condition of

probation is reviewed on appeal using an abuse of discretion standard,” State v.

Chadwick, 843 S.E.2d 263, 264 (N.C. Ct. App. 2020) (citation omitted), “[a]n alleged

error in statutory interpretation is an error of law, and thus our standard of review

for this question is de novo,” State v. Wainwright, 240 N.C. App. 77, 79, 770 S.E.2d

99, 102 (2015) (citation omitted).

 Under North Carolina’s criminal statutes, a trial court may sentence a

defendant to special probation as a form of intermediate punishment, under certain

circumstances. N.C. Gen. Stat. § 15A-1351(a) (2019). When doing so,

 the court may suspend the term of imprisonment and place
 the defendant on probation . . . and in addition require that
 the defendant submit to a period or periods of
 imprisonment . . . at whatever time or intervals within the
 period of probation, consecutive or nonconsecutive, the
 court determines. . . . [T]he total of all periods of
 confinement imposed as an incident of special probation,
 but not including an activated suspended sentence, may
 not exceed one-fourth the maximum sentence of
 imprisonment imposed for the offense, and no confinement
 other than an activated suspended sentence may be
 required beyond two years of conviction.

Id.

 Thus, under the statute, a period or periods of imprisonment must be “within

the period of probation,” and no portion of this imprisonment “may be required

beyond two years of conviction.” Id. Accordingly, the statute itself sets the outer

limit, or completion deadline, of an active term as a condition of special probation as

 - 10 -
 STATE V. RAY

 Opinion of the Court

the end of the period of probation or two years after the date of conviction, whichever

comes first.

 In this case, the trial court sentenced Defendant to 10 to 21 months of

imprisonment, and suspended that sentence for 24 months of supervised probation.

As a condition of probation, the trial court ordered Defendant to serve a 60-day active

term. On the Judgment Suspending Sentence form (AOC-CR-603D), under

Intermediate Punishments, the trial court selected Special Probation and checked

box A, ordering an active term of 60 days to be served in the custody of the Sheriff of

Harnett County. The trial court also checked box H, labeled “Other,” and inserted

the following: “TO SERVE 30 DAYS AT ONE TIME AND 30 DAYS AT ANOTHER

TIME AS SCHEDULED BY PROBATION.”

 The trial court appropriately determined the “intervals within the period of

probation” as two thirty-day periods, and the completion date is set by statute as

27 August 2021—which, in this case, is both the end of the two-year probationary

period and two years from the date of conviction.

 IV. Conclusion

 We conclude that the trial court did not err by imposing a sentence based on

convictions for both obtaining property by false pretenses and insurance fraud based

on the same misrepresentation, and the trial court did not err by failing to set a

 - 11 -
 STATE V. RAY

 Opinion of the Court

completion deadline for the active term of Defendant’s sentence as a condition of

special probation.

 NO ERROR.

 Judges BRYANT and TYSON concur.

 - 12 -